**2021 IL 126082**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 126082)

WESTERN ILLINOIS UNIVERSITY, Appellee, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Appellants.

*Opinion filed October 21, 2021.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Theis, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.

Justice Neville dissented, with opinion, joined by Chief Justice Anne M. Burke.

**OPINION**

¶ 1        The Illinois Educational Labor Relations Board (Board) found that Western Illinois University (University) committed an unfair labor practice in violation of section 14(a)(8) and, derivatively, section 14(a)(1) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1), (8) (West 2016)) by failing to comply

with two arbitration awards. On administrative review, the appellate court vacated the Board's decision and remanded with directions. 2020 IL App (4th) 190143.

¶ 2        In reviewing the decision of the Board, we consider whether an arbitrator in the public educational labor relations context exceeds his authority by reviewing a party's compliance with his own award in contravention of the Act, which vests exclusive primary jurisdiction over arbitration awards with the Board. We also consider whether the Board may limit the evidence it will consider in an unfair labor practice proceeding under the Act to the evidence before the arbitrator. We hold that an arbitrator does exceed his authority in conducting such a review and that the Board may not limit the evidence in this way. Accordingly, we vacate the Board's decision and remand with directions to consider all evidence relevant to whether the University violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act.

¶ 3                                    BACKGROUND

¶ 4        The Act governs labor relations between public education employers and employees. 115 ILCS 5/1 *et seq.* (West 2016). Among other things, the Act requires that public education employers and employees collectively bargain, reduce their collective bargaining agreement (CBA) to writing, and arbitrate disputes that arise under the agreement. *Id.* § 10. Refusal to comply with the provisions of a binding arbitration award is an "unfair labor practice" under the Act. *Id.* § 14. The Act's "unfair labor practice procedures" assign review and enforcement of unfair labor practices to the Board. *Id.* § 15.

¶ 5        Arbitrators acting pursuant to the Act—and, indeed, arbitrators acting across varying contexts and jurisdictions—routinely retain limited jurisdiction of their awards for the sole purpose of resolving remedial issues that may arise from the award itself. See Am. Bar Ass'n, *Elkouri & Elkouri: How Arbitration Works*, 7-49 to 7-54 (Kenneth May ed., 8th ed. 2016) (hereinafter *How Arbitration Works*). This retained jurisdiction is sometimes referred to as "remedy jurisdiction." The classic example of remedy jurisdiction in action is where an arbitrator orders a party to be "made whole." If the parties cannot agree on the particulars of what is required to make the party whole, they may petition the arbitrator for an explanation. The arbitrator may then exercise his retained jurisdiction to specify what must be done.

¶ 6        In this case, an arbitrator exercised this remedy jurisdiction specifically to determine whether a party had complied with his earlier award. We must decide whether this exercise of remedy jurisdiction conflicted with the language and procedures of the Act, which vests exclusive primary jurisdiction over compliance review of arbitration awards with the Board. *Board of Education of Warren Township High School District 121 v. Warren Township High School Federation of Teachers, Local 504*, 128 Ill. 2d 155, 166 (1989); *Board of Education of Community School District. No. 1 v. Compton*, 123 Ill. 2d 216, 221 (1988). With this general background in place, we turn to the facts.

¶ 7                              *University Layoffs and Arbitration Proceedings*

¶ 8        In response to declining enrollment, the University laid off 19 professors throughout the 2016-17 school years. Ten of the laid off professors, represented by University Professionals of Illinois, Local 4100, IFT-AFT, AFL-CIO (Union), filed grievances pursuant to the parties' CBA. The Union alleged that the University had not followed the proper procedures outlined in the CBA for laying off these professors. The grievances proceeded to arbitration.

¶ 9        The arbitrator issued his original award on July 6, 2017. In this award, the arbitrator noted that the parties agreed on the following issue: "Did the University violate the Parties['] Collective Bargaining Agreement when it laid off [the 10 grievants]? If so, what is the appropriate remedy?" Relevant here, the arbitrator found that the University violated the CBA as to Dr. Daniel Ogbaharya by failing to properly consider the factors required by the CBA in coming to its layoff decision. The arbitrator ordered that Dr. Ogbaharya be made whole for the 2016-17 school year and that the University reevaluate its layoff decision by properly considering all factors set forth in the CBA. The arbitrator also found that the University violated the CBA as to Dr. Holly Stovall by failing to make a reasonable effort to locate other equivalent employment within the University prior to the effective date of her layoff. The arbitrator ordered the University to make a reasonable effort in this regard and report back to Dr. Stovall on this effort. At the close of the award, the arbitrator stated he "shall retain Jurisdiction for no less than 90 days to resolve any issues regarding the implementation of this Award."

¶ 10	On September 12, 2017, the Union's attorney sent an e-mail to the arbitrator, which opened:

> "In your Arbitration Award in this case, you retained jurisdiction for no less than 90 days to resolve any issues regarding the implementation of the Award. On behalf of the Union, I am writing to invoke your remedy jurisdiction. As set forth below, the Union believes that the University has not complied with the Award in this case."

A few days later, the University responded with documentation purporting to detail its compliance and stated its position "that no further proceedings are warranted."

¶ 11	A series of e-mail exchanges ensued over the next few months. The Union continued to invoke the arbitrator's remedy jurisdiction in its request for a hearing on whether the University complied with the award. The University argued that the arbitrator lacked statutory authority to determine compliance because the Board was vested with exclusive primary jurisdiction over such review by the Act. It also argued that the arbitrator lacked contractual authority under the terms of the CBA to review its compliance with an earlier award. The Union replied that taking the matter to the Board was not required at this time because the arbitrator had retained jurisdiction over the remedy and such retention was proper. Near the end of this set of e-mails, the Union sought to clarify its position that it was asking the arbitrator to "resolve issues regarding the implementation of the award."

¶ 12	The arbitrator decided to hold a hearing:

> "The University contends it implemented the Award. The Union contends it did not. The issue being raised by the Union is whether there was implementation of the Award. That is an issue that cannot be resolved without a hearing. It is, however, not a new issue, which I could not decide, but part of the original issue the parties authorized this Arbitrator to decide. On that basis, the Arbitrator grants the Union's request for a hearing over the implementation of the Award regarding the four Grievants at issue. They are Hijar, Sellen, Stovall, and Ogbahara [*sic*]. The issue on all four is whether the University implemented the directives of the Award."

¶ 13      On January 2, 2018, two weeks before the scheduled hearing, the Union filed an unfair labor practice charge with the Board alleging the University violated section 14(a)(8) and (1) of the Act by refusing to comply with the original award.

¶ 14      On January 16, 2018, the arbitrator held the hearing with both parties in attendance. The arbitrator noted the University's objection to his authority but proceeded with the hearing, stating, "what we are here today is on the Union's contention that with regard to those four grievants, that the University has failed to comply with the requirements of my earlier award." Following the hearing, the parties filed briefs repeating their arguments.

¶ 15      On March 5, 2018, the arbitrator issued a "supplemental award." In it, he found that the University "failed to comply with the Award" as to Dr. Ogbaharya and had "violated the Award" as to Dr. Stovall. The arbitrator ordered that Dr. Ogbaharya be offered reinstatement and be made whole until offered reinstatement. As to Dr. Stovall, the arbitrator found that there were open classes she could have taught in the fall semester of 2017, and the arbitrator ordered that she be made whole for that semester. The arbitrator also directed that "[s]he should have been offered work for the Spring Semester and the 2018-9 year if the same factors were present." The supplemental award ended: "The Arbitrator shall continue to retain jurisdiction as to the remaining two Grievants to resolve any questions regarding the implementation of this Supplemental Award."

¶ 16      On March 8, 2018, the Union amended its unfair labor practice charge to include the University's refusal to comply with the supplemental award.

¶ 17      On March 29, 2018, the Union asked the arbitrator for a second supplemental award finding that certain classes were available for Dr. Stovall to teach in the spring semester of 2018 and beyond and that she should therefore be made whole and/or offered employment. In response, the University disputed these facts and pointed out that the matter was currently pending before the Board. The Union replied that the arbitrator's retained jurisdiction allowed him to rule on this second supplemental award. The arbitrator concluded that the best course of action was to let the Board rule on the pending charges and make a determination on his authority.

¶ 19          The matter proceeded to the Board. An administrative law judge (ALJ) first conducted a hearing on the complaint. At the hearing, the University sought to introduce certain witness testimony related to its compliance with the original award. The Union objected, arguing that this testimony had not been presented to the arbitrator and therefore the Board could not consider it. The ALJ allowed the testimony to be included in the record. Finding no determinative issues of fact that required a recommended decision, the ALJ removed the case to the Board for a decision.

¶ 20          The Board concluded that the University had violated section 14(a)(8) and, derivatively, section 14(a)(1) of the Act by refusing to comply with both awards. As to the supplemental award, the Board recognized its "exclusive primary jurisdiction over whether an employer has complied with an arbitration award" but concluded that the arbitrator's compliance review, conducted pursuant to his remedy jurisdiction, did not conflict with that authority. Thus, the arbitrator did not exceed his statutory authority. The Board also determined that the arbitrator did not exceed his contractual authority because the supplemental award "did not involve a new issue, but [was] part of one of the issues the parties originally agreed to arbitrate, that is, what should the remedy be." Consequently, the supplemental award was binding, and the University committed an unfair labor practice in refusing to comply. As to the original award, the Board refused to consider the University's new evidence, stating that, in reviewing an award, "evidence which was not before the arbitrator may not be considered." It therefore deferred to the arbitrator's decision that the University failed to comply and held that the University committed an unfair labor practice.

¶ 21          On direct administrative review, the appellate court found differently. 2020 IL App (4th) 190143. It held that the arbitrator exceeded his statutory authority in issuing the supplemental award because the exercise of remedy jurisdiction to review a party's compliance conflicted with the Board's exclusive primary jurisdiction over compliance review. The court saw no meaningful distinction between "implementation" and "compliance review" in what the arbitrator did here. The court also held that the arbitrator exceeded his contractual authority by going beyond the "precise issue" presented to him in the original award to reach a new

issue in the supplemental award, contrary to the express terms of the CBA itself. Finally, the court concluded the Board erred in refusing to consider the University's new evidence because the Board has a statutory duty to consider such evidence in determining whether an unfair labor practice has been committed. It therefore vacated the Board's opinion and remanded with directions that the Board consider all evidence relevant to whether the University complied with the original award.

¶ 22 The Union, joined by the Board, now appeals to this court. Ill. S. Ct. R. 315 (eff. Oct. 1, 2019). We allowed the Illinois Education Association to file an *amicus* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 23 ANALYSIS

¶ 24 *Issues Presented*

¶ 25 The ultimate issue before this court is whether the Board properly found that the University violated section 14(a)(8) and, derivatively, section 14(a)(1) by refusing to comply with the arbitrator's original and supplemental awards. As laid out in its opinion and order, the Board considers three factors when determining whether an employer has violated section 14(a)(8): "(1) whether the arbitration is binding, (2) what is the content of the award, and (3) whether the employer has complied with the award." *University Professionals of Illinois, Local 4100*, 35 PERI ¶ 133 (IELRB 2019).

¶ 26 The University admits it did not comply with the supplemental award but argues the award was not binding because the arbitrator lacked statutory and contractual authority to issue it. As to the original award, the University contends it did comply and that the Board improperly excluded relevant evidence in reaching its conclusion to the contrary.

¶ 27 The Union and Board argue that the arbitrator had both statutory and contractual authority to issue the supplemental award and therefore the supplemental award was binding. In making these arguments, they rely heavily on a number of foreign and secondary authorities for support. They also argue that the Board properly limited the evidence under review to the record before the arbitrator in reviewing compliance with the original award.

¶ 28     Thus, to resolve the ultimate issue we must consider whether the Act prevents an arbitrator from conducting a compliance review, whether the arbitrator in this case actually conducted a compliance review, and whether the Board may limit its evidentiary review of an unfair labor practice to the record before the arbitrator.

¶ 29                                   *Standard of Review*

¶ 30     Judicial review of the Board's decision is taken directly to the appellate court and is governed by the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2016)). 115 ILCS 5/16 (West 2016). On administrative review, this court reviews the decision of the agency, here the Board, rather than that of the appellate court. *Board of Education of the City of Chicago v. Illinois Educational Labor Relations Board*, 2015 IL 118043, ¶ 14. Review extends to all questions of law and fact presented by the record. 735 ILCS 5/3-110 (West 2016). The standard of review is determined by the question presented. *Chicago*, 2015 IL 118043, ¶ 14. An agency's findings of fact will be deemed *prima facie* true and correct unless they are against the manifest weight of evidence. *Id.* ¶ 15. An agency's findings on questions of law are reviewed *de novo*. *Id.* A mixed question of law and fact is reviewed for clear error. *Id.* ¶ 16.

¶ 31                                 *Statutory Construction*

¶ 32     We first address the Act itself. Whether the Act vests the Board with exclusive jurisdiction—even as to arbitrators—over compliance review of a binding arbitration award is a question of statutory interpretation. An issue of statutory interpretation presents a question of law subject to *de novo* review. *Dew-Becker v. Wu*, 2020 IL 124472, ¶ 12. A reviewing court is not bound by an agency's interpretation of a statute. *Chicago*, 2015 IL 118043, ¶ 15. However, in construing the Act, we have recognized that the Board's interpretation remains relevant where there is a reasonable debate about the meaning of a statute. *Id.*

¶ 33     The fundamental rule of statutory interpretation is to ascertain and give effect to the legislature's intent, and the best indicator of that intent is the statutory language, given its plain and ordinary meaning. *Cooke v. Illinois State Board of Elections*, 2021 IL 125386, ¶ 52. The statute must be viewed as a whole, and as

- 8 -

such, this court construes words and phrases not in isolation but relative to other pertinent statutory provisions. *State ex rel. Leibowitz v. Family Vision Care, LLC*, 2020 IL 124754, ¶ 35. No part of a statute should be rendered meaningless or superfluous. *Rushton v. Department of Corrections*, 2019 IL 124552, ¶ 14. "Courts should not attempt to read a statute other than in the manner it was written." *People ex rel. Madigan v. Kinzer*, 232 Ill. 2d 179, 185 (2009). "Where the statutory language is clear and unambiguous, the plain and ordinary meaning of the words will be given effect without resorting to extrinsic aids for construction (*e.g.*, statutes from other States)." *Board of Education of Rockford School District No. 205 v. Illinois Educational Labor Relations Board*, 165 Ill. 2d 80, 87 (1995). We will not read into the statute exceptions, conditions, or limitations that the legislature did not express. *Jackson-Hicks v. East St. Louis Board of Election Commissioners*, 2015 IL 118929, ¶ 21.

¶ 34     "We likewise keep in mind the subject addressed by the statute and the legislature's apparent intent in enacting it." *Cooke*, 2021 IL 125386, ¶ 52. The Act revolutionized Illinois school labor law. *Compton*, 123 Ill. 2d at 219. Adopted in the same legislative session as the Illinois Public Labor Relations Act (Labor Relations Act) (5 ILCS 315/1 *et seq.* (West 2020)), the two acts together provide a comprehensive regulatory scheme for public sector bargaining in Illinois. *Compton*, 123 Ill. 2d at 221. Whereas the Labor Relations Act governs labor relations between most public employers and employees, the Act specifically governs public educational employers and employees. Finding that unresolved educational labor disputes were " 'injurious to the public,' " the legislature determined that " 'adequate means must be established for minimizing them and providing for their resolution.' " *Id.* at 220 (quoting Ill. Rev. Stat. 1985, ch. 48, ¶ 1701). To achieve these ends, the Act created rights and duties unknown at common law, including compelled arbitration of grievances. *Warren*, 128 Ill. 2d at 166; *Compton*, 123 Ill. 2d at 220.

¶ 35     With these principles in mind, we turn to the text of the Act. The parties specifically identify section 14(a)(8) as the language at issue: "Refusing to comply with the provisions of a binding arbitration award." 115 ILCS 5/14(a)(8) (West 2016). To determine the legal effect of this section on the exclusive or inclusive nature of the Board's authority, we must read it in context with the other relevant portions of the statute.

¶ 36    Section 1 announces the purpose and policy of the Act. *Id.* § 1. The Act's purpose is to "promote orderly and constructive relationships between all educational employees and their employers" and "to regulate labor relations between educational employers and educational employees, including the \*\*\* resolution of disputes arising under collective bargaining agreements." *Id.* The legislature recognized the "substantial differences" in educational labor relations and concluded "that such differences demand statutory regulation of collective bargaining between educational employers and educational employees in a manner that recognizes these differences." *Id.* Consequently, "the General Assembly has determined that the overall policy may best be accomplished by [among other things] establishing procedures to provide for the protection of the rights of the educational employee, the educational employer and the public." *Id.*

¶ 37    Section 10 requires educational employers and unions to bargain collectively and to reduce their agreement to writing. *Id.* § 10(a), (d). It also requires the agreement to "contain a grievance resolution procedure which shall apply to all employees in the unit and shall provide for binding arbitration of disputes concerning the administration or interpretation of the agreement." *Id.* § 10(c). The parties "shall not effect or implement a provision in a collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois." *Id.* § 10(b).

¶ 38    Section 2(h) defines "unfair labor practice" or "unfair practice" as "any practice prohibited by Section 14 of this Act." *Id.* § 2(h). Section 14(a)(8) prohibits employers from refusing to comply with the provisions of a binding arbitration award. *Id.* § 14(a)(8). Thus, refusal to comply with a binding arbitration award *is* an unfair labor practice.

¶ 39    Section 15 outlines the "unfair labor practice procedure." *Id.* § 15. It provides: "A charge of unfair labor practice may be filed with the Board by an employer, an individual or a labor organization." *Id.* If after investigation the Board finds that the charge states an issue of law or fact, it is directed to serve a complaint against the charged party. "At hearing, the charging party may also present evidence in support of the charges and the party charged may file an answer to the charges, appear in person or by attorney, and present evidence in defense against the charges." *Id.* The

- 10 -

Board possesses the power to issue subpoenas and administer oaths. It may also apply to the circuit court for an order to compel attendance at the hearing to testify or to produce requested documents. If the Board finds that an unfair practice has been committed, it will order the party to cease the practice and may take other affirmative action to provide a remedy. The Board may also petition the circuit court for orders enforcing its decisions, including but not limited to orders for injunctions. *Id.*

¶ 40 Notably, the Act does not provide for automatic review of an arbitration award. *Compton*, 123 Ill. 2d at 226. Instead, this court has recognized that the appropriate method for challenging the validity of an arbitration award is to refuse to comply with the award and then litigate the dispute in an unfair labor practice proceeding before the Board. *Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721, ¶ 13. Thus, regardless of whether a party seeks to enforce or challenge an award, the matter is brought to the Board for review after the filing of an unfair labor practice charge alleging refusal to comply with a binding arbitration award.

¶ 41 The plain language of the statute yields a natural and reasonable chain of procedures that leads us to conclude it vests exclusive primary jurisdiction over compliance review of arbitration awards to the Board: The legislature established a specific procedure to govern the unique nature of educational labor relations, intending to protect the rights of all parties and the well-being of the public. That procedure includes compelled arbitration and Board oversight of compliance with that arbitration. Review over "refusal" to comply with an arbitration award includes review over "failure" to comply, as there is no other way to trigger review of an arbitration award in the public educational labor relations context. Refusal or failure to comply with an award is specifically designated an unfair labor practice, and the Act lays out specific unfair labor practice procedures, which provide that the Board—not the arbitrator—will investigate, hold hearings, and make a determination on compliance. The statutory language does not allow for any other entity, including the original arbitrator, to make a substantive review of compliance with a binding award in the first instance. That duty, responsibility, and authority lies exclusively with the Board.

¶ 42     We conclude the Act is plain and unambiguous. The statute must therefore be applied as written without resort to extrinsic aids of statutory construction, and we will not read into it exceptions, conditions, or limitations that the legislature did not express. Regardless of how compliance with binding arbitration awards is reviewed in other arbitration contexts, the Act provides that such review lies, in the first instance, with the Board in the unique setting of public educational labor relations.

¶ 43     The Board and Union argue that the Act is silent on the issue and so the Board correctly turned to various secondary and foreign authorities for guidance. It is true that the Act does not expressly state where the arbitrator's authority begins and ends in the educational labor arbitration context, but the Act *does* speak to the Board's authority. As we have shown, there are multiple provisions that when read together clearly vest exclusive authority over compliance review with the Board, regardless of whether that scheme might be unique compared to other arbitration contexts. Consequently, the arbitrator's authority is necessarily limited.

¶ 44     In the same vein, the Board and Union argue that the Act is ambiguous. To resolve this ambiguity, they rely on the aforementioned secondary and foreign authorities from across a wide array of jurisdictions and arbitration contexts: Illinois commercial arbitration law, federal labor law, Pennsylvania caselaw interpreting the Pennsylvania Public Employee Relations Act (43 Pa. Cons. Stat. § 1101.201 *et seq.* (2020)), and a leading treatise on arbitration. *E.g.*, *Hollister Inc. v. Abbott Laboratories*, 170 Ill. App. 3d 1051, 1057-60 (1988) (upholding the exercise of retained jurisdiction to implement an award where commercial arbitrators issued a nonfinal award directing the parties to negotiate over a contractual term and then issued a second award after negotiations failed); *CUNA Mutual Insurance Society v. Office & Professional Employees International Union, Local 39*, 443 F.3d 556, 565 (7th Cir. 2006) (stating "there is an abundance of case law in both this circuit and other circuits that recognizes the propriety of an arbitrator retaining jurisdiction over the remedy portion of an award"); *Greater Latrobe Area School District v. Pennsylvania State Education Ass'n*, 615 A.2d 999, 1004-05 (Pa. Commw. Ct. 1992) (holding that the arbitrator's retention of jurisdiction was a procedural matter within the exclusive province of the arbitrator); *How Arbitration Works*, *supra*, at 7-50 ("[I]n virtually all cases of grievance arbitration where a remedy is called for, labor arbitrators ought to routinely retain jurisdiction of the award solely for the purposes of resolving any disputes among the parties regarding the meaning,

application, and implementation of that remedy." (Internal quotation marks omitted.)). In their view, the clear consensus across multiple contexts is that arbitrators have the authority to retain jurisdiction over the implementation of an award.

¶ 45     We find no ambiguity. Extrinsic sources of statutory meaning, such as legislative history, secondary sources, and foreign authorities, are meant to " 'clean up ambiguity, not create it.' " *Roberts v. Alexandria Transportation, Inc.*, 2021 IL 126249, ¶ 48 (quoting *Milner v. Department of the Navy*, 562 U.S. 562, 574 (2011)); compare *Rockford*, 165 Ill. 2d at 88 (declining to consider foreign authority in construing the Act where the language is clear and unambiguous), with *Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 509, 512-23 (1992) (consulting multiple extrinsic sources in order to resolve a conflict between two sections of the Act).

¶ 46     The Board and Union's argument regarding the legitimacy of remedy jurisdiction misses the mark. We take no issue with an arbitrator's general authority to retain limited jurisdiction to resolve certain disputes arising from the remedy portion of an arbitration award. That general authority is not being challenged here. The challenge is much more specific: whether the exercise of remedy jurisdiction specifically to review a party's compliance with an arbitration award conflicts with the exclusive primary jurisdiction of the Board under the Act.

¶ 47     Furthermore, these authorities are distinguishable. As the appellate court pointed out, nothing like section 14(a)(8) is found in Illinois commercial arbitration law or federal labor law. 2020 IL App (4th) 190143, ¶ 33. Thus, statutory construction of those schemes does not require any consideration whatsoever of the effect of section 14(a)(8)'s specific language and placement. The Board and Union largely ignore the differences in statutory language and structure between the Act and these authorities. Given that Illinois was one of the last major industrial states to enact labor relations legislation—"and thus the legislature had the benefit of reviewing the public sector experiences of other States, as well as those in the private sector"—glaring differences like the inclusion of section 14(a)(8) cannot be construed as anything other than intentional divergence. *Central*, 149 Ill. 2d at 519.

¶ 48     The Pennsylvania Public Employee Relations Act, on the other hand, does contain a similar provision making it an unfair labor practice to refuse to comply

with a binding arbitration award. Compare 115 ILCS 5/14(a)(8) (West 2016), with 43 Pa. Cons. Stat. § 1101.1201(a)(8) (2016). The Pennsylvania statute is germane to this discussion because the General Assembly used the Pennsylvania experience as a model in creating the Act. *Central*, 149 Ill. 2d at 513. Although we have noted that Pennsylvania's interpretation of its statute is relevant to our own analysis of the Act, we have also repeatedly distinguished it where it departs from the Act's language and structure. *E.g.*, *id.* ("The Pennsylvania statute differs from the Illinois statute in a very important way."); *id.* at 515 ("It is important to note that precedents from our sister States are of limited value in this case because each State's public employment relations statute is different from the Illinois law, although they all have a common purpose. Thus, the analysis of the law of our sister States is relevant solely as an aid to this court in interpreting both the legislative intent and the public policy surrounding the Illinois law."); *Compton*, 123 Ill. 2d at 223 ("As for the cases involving statutes of other States, the short answer to the appellant's citation of these cases is that these statutes differ from ours.").

¶ 49     Here, both statutes make refusal to comply with an arbitration award an unfair labor practice, but the methods of *reviewing* arbitration awards have greatly diverged. Pennsylvania caselaw provides for judicial review of arbitration awards by the trial courts, whereas Illinois caselaw provides that "exclusive primary jurisdiction" to review arbitration awards lies with the Board. *Compton*, 123 Ill. 2d at 223-24 ("Our statute, in contrast [to Pennsylvania's], provides for a specific form of judicial review which the legislature apparently intended would exclude all others" (referencing *In re Appeal of Upper Providence Police Delaware County Lodge No. 27 Fraternal Order of Police*, 526 A.2d 315, 321 (Pa. 1987))).

¶ 50     This is no small difference, contrary to the Board's next argument that section 14(a)(8) does not affect the *substantive authority* of the reviewing body but only the *identity* of the reviewing body. In other words, section 14(a)(8) merely transfers "enforcement responsibilities" from the courts (under the Pennsylvania scheme) to the Board (under the Act's scheme) without enlarging the Board's authority. Consequently, the Board continues, the Act neither adds to nor subtracts from the arbitrator's authority. Under this reading, "the legislature intended for the Board to have the same role under the Act as the courts have under the Illinois Uniform Arbitration Act."

¶ 51　　This argument goes too far. Although it is true that the courts and the Board fulfill a similar role when it comes to arbitration, they do not have exactly the same scope of authority and power. In addition to all the general power and authority conferred by rule, statute, and constitution to the circuit courts, the circuit courts are governed specifically in arbitration by the Uniform Arbitration Act (Arbitration Act) (710 ILCS 5/1 *et seq.* (West 2016)). The Board, on the other hand, is governed primarily by the Act. The two schemes grant differing levels of power and authority, which in turn affect the authority of the arbitrators operating within their respective spheres. For instance, the Arbitration Act expressly exempts labor arbitration from some of its most important enforcement provisions. *E.g.*, *id.* § 12(a), (e) (enumerating the statutory grounds for vacatur of an arbitration award available to the circuit courts while leaving common-law grounds for vacatur available to the Board); *cf.*, *e.g.*, *Compton*, 123 Ill. 2d at 221-22 (observing that, although the Act's sister statute, the Labor Relations Act, explicitly provides for enforcement of arbitration awards in accordance with the Arbitration Act, the Act does not).

¶ 52　　Thus section 14(a)(8), when read in context with the entire statutory scheme, does more than merely reassign the locus of enforcement responsibilities. It necessarily affects the substance of those responsibilities as well and in turn affects the substance of the authority of arbitrators under the Act. We therefore find the Board's argument and reliance on Pennsylvania caselaw unpersuasive. Pennsylvania has interpreted its statutory provision to allow for review of arbitration awards by the state trial courts, which affects how that provision interacts with the rest of Pennsylvania's statutory scheme. This court, however, has interpreted our provision as assigning review with the Board, which alters the way it interacts with the rest of our statutory scheme. As we have explained, one such way this express assignment of responsibility interacts with our scheme is to grant exclusive primary jurisdiction over compliance review of arbitration awards with the Board.

¶ 53　　This interpretation is consistent with our precedent regarding the Act and the Board's application of its jurisdiction. *Warren*, 128 Ill. 2d at 163; *Compton*, 123 Ill. 2d at 221 (explaining that the legislature intended to vest exclusive primary jurisdiction over arbitration disputes with the Board). Although *Compton* and *Warren* specifically dealt with the role of the circuit court in arbitration review, we

recognized that the Act, in contrast to other states' statutes, "provides for a specific form of judicial review which the legislature apparently intended would exclude all others." *Compton*, 123 Ill. 2d at 223-24. Opinions and orders from the Board and its ALJs routinely cite these cases in support of their exclusive jurisdiction over arbitration awards. *E.g.*, *District 150 Educational Organization*, 37 PERI ¶ 62 (IELRB 2020) ("The IELRB has exclusive jurisdiction to determine whether arbitration awards involving public educational employers, employees, and exclusive bargaining representatives are binding and to vacate or enforce those awards accordingly." (citing *Compton*, 123 Ill. 2d 216)). The Board recognized its "exclusive primary jurisdiction over the issue of whether the University complied with the original award" in this very case. *University Professionals of Illinois, Local 4100*, 35 PERI ¶ 133 (IELRB 2019). Furthermore, the Board's own standard for reviewing section 14(a)(8) violations includes reviewing "whether the employer has complied with the award." *Id.* Despite the Union's suggestion that arbitrator's compliance review in this case was normal, no party has submitted any Illinois authority involving arbitration under the Act, whether from the courts or the Board itself, that includes an arbitrator reviewing his own award for compliance and then issuing a supplemental award based on noncompliance.

¶ 54    This interpretation also conforms to the stated policy and purposes of the statute. The Act seeks to minimize the societal harm caused by interminable educational labor disputes, and our interpretation of the plain language aligns with that aim by creating a clear, straightforward path to resolution: the arbitrator issues an award, a party refuses or otherwise fails to comply, and the aggrieved party brings the matter to the Board. Naturally, the Board will encounter situations where it may feel it appropriate to refer the matter back to the arbitrator, but in making the Board responsible for compliance review, threshold issues may be resolved from the outset. This process promotes the "uniformity which the Act obviously seeks to achieve" (*Compton*, 123 Ill. 2d at 222) and "promote[s] orderly and constructive relationships between all educational employees and their employers" (115 ILCS 5/1 (West 2016)) because arbitration awards will follow a clear, predictable path to the Board, whose precedential guidance will control on commonly recurring issues across all of public education. This process also incentivizes arbitrators to issue awards in as complete a fashion as possible as early as possible, furthering the objective of the statute in minimizing unresolved disputes between educational employers and employees and the injury they cause to the public. *Id.* If this process

differs from those followed in other labor arbitration contexts, that is by an express statutory design demanded by the unique differences inherent to educational labor relations. *Id.*

¶ 55                    *Whether the Arbitrator Exceeded His Authority*

¶ 56        Having interpreted the statute, we must now address whether the arbitrator actually conducted a compliance review and thereby exceeded his authority in contravention of the Act. Whether an arbitrator exceeded his authority is a question of law. *Griggsville-Perry Community Unit School District No. 4*, 2013 IL 113721, ¶ 20. We therefore review this issue *de novo*, without being bound by the Board's reasoning or conclusion. However, answering this question will require reviewing the award itself to determine its legal effect, and " 'review of an arbitrator's award is extremely limited.' " *Id.* ¶ 18 (quoting *American Federation of State, County & Municipal Employees v. State*, 124 Ill. 2d 246, 254 (1988) (*AFSCME*)). There is a presumption that an arbitrator has not exceeded his authority. *Rauh v. Rockford Products Corp.*, 143 Ill. 2d 377, 386 (1991). "[A] court must construe an award, if possible, as valid." *AFSCME*, 124 Ill. 2d at 254. Here, however, the language used throughout the entirety of the supplemental award and proceedings cannot be construed as effectuating anything other than compliance review with the original award.

¶ 57        The issue of "compliance review" was repeatedly and unavoidably cemented as the central issue in the supplemental award, beginning in the second paragraph:

> "The Union following the issuance of the Award believed the University failed to comply with the Award regarding four of the Grievants. It filed a Motion requesting the Arbitrator rule on whether there was compliance. The University objected to the request. It maintained the Arbitrator lacked Jurisdiction to rule on the issues raised by the Union."

¶ 58        This formulation of the issue was repeated throughout the arbitrator's analysis regarding Dr. Ogbaharya:

> "This Arbitrator in his initial award concluded that the University failed to consider all factors set forth in [the CBA]. *** The Arbitrator directed the

University to redo its layoff decision and look at all factors, including length of service with the University. The University maintains it did the review immediately after the Award was issued, and the review did not change its decision. *** From all the facts, the Arbitrator finds the University did not make a good faith effort to redo the layoff decision. *** When these factors are coupled with the statements by Dr. Morgan described above the Arbitrator finds the University did not in good faith comply with the Award."

¶ 59    The arbitrator's analysis regarding Dr. Stovall similarly tracked the issue of noncompliance:

"The Arbitrator found in his initial award the University failed to make a reasonable effort to find equivalent employment for [Dr. Stovall]. The Award directed the University to make that effort. *** The Union contends this was not done. For the Union to prevail on its argument that there has been non-compliance with the Award, the Union must show two things. *** From the above, the Arbitrator finds the University failed to comply with the requirements of [the CBA] as to Dr. Stovall. It did not make a reasonable effort 'to locate other equivalent employment' for her and that work existed. *** The original Award said: 'if there were enough open course for any of the Grievants to teach they should be afforded the opportunity.' She was not afforded the opportunity. The University thereby failed to implement the Award as it was directed to do."

¶ 60    The "Conclusion" paragraph made explicit that the remedies issued in the supplemental award were based on failure to comply with the original award:

"This Arbitrator retained 'Jurisdiction for no less than 90 days to resolve any issues regarding the implementation of this Award.' The Union alleged the terms of the Award were not implemented for four of the Grievants. It asked the Arbitrator to determine if that was so and to issue a remedy if it was found there was a failure to follow the Award. The Arbitrator has found the Award was not implemented as directed as to two of the Grievants. This Supplemental Award implements the terms of the initial Award and imposes damages for the failure of the University to follow the directives of that initial Award."

¶ 61	Even if we ignore the arbitrator's analysis and focus solely on the express terms of the remedies issued in the "Award" section, we see the same focus on compliance review with the original award and no mention of reviewing the contract itself: "The University violated the Award as to Holly Stovall. *** The University failed to comply with the Award as to Danial Ogbaharya." The remedies issued thereafter were again clearly based on noncompliance with the original award itself.

¶ 62	The issue of compliance review originated long before the supplemental award was handed down. The Union framed the issue as one of noncompliance with the original award from the outset of the supplemental proceedings. The University responded according to that understanding, and that understanding was reinforced by the arbitrator's repeated assertions throughout the proceedings that the issue before him was compliance with the original award. No party asked for clarification or correction of the original award. No misunderstanding of what was required of the parties was raised. The only question raised concerned the University's compliance. It is entirely consistent and no surprise, therefore, that the arbitrator purported to review compliance with the original award and then issued the supplemental award using that exact language.

¶ 63	The Board itself recognized at oral argument that the arbitrator found the University "failed to comply with the original award." Nevertheless, it and the Union maintain that the arbitrator's compliance review did not conflict with the Board's exclusive authority. They provide a number of arguments that we find either underdeveloped or unpersuasive.

¶ 64	First, they argue the arbitrator was merely reviewing contractual compliance whereas the Board was reviewing statutory compliance. Beyond making this suggestion, they did not develop this argument further. Similarly, they suggest that the arbitrator was merely "implementing" the original award pursuant to his remedy jurisdiction rather than conducting a "compliance review" in contravention of the statute. In making this argument, however, they simultaneously—or perhaps alternatively—equate the two terms. If there is a meaningful difference between "implementation" and "compliance review," the Board and Union did not adequately present it for our consideration. Conclusory and underdeveloped assertions pose an impediment to addressing these issues with any depth under principles of party presentation. See *People v. Givens*, 237 Ill. 2d 311, 324 (2010)

(" '[A]s a general rule, [o]ur adversary system is designed around the premise that the parties know what is best for them and are responsible for advancing the facts and arguments entitling them to relief.' " (Internal quotation marks omitted.) (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008))).

¶ 65        In a related argument, the Board and Union assert that the issue addressed in the original award had not yet been resolved. Thus, the arbitrator had not yet settled the dispute, and the supplemental award was merely an extension of the original issue. We disagree. The issue in the original award was whether the University improperly laid off the professors in the 2016-17 school year and, if so, what was the appropriate remedy; the issue in the supplemental award was whether the University complied with the original award's remedy. The original award found a violation of the *CBA* and issued a remedy; the supplemental award found a violation of the original *award* and issued additional remedies. As the appellate court pointed out, the original award directed the University to take certain actions, and by definition, all evidence pertaining to whether the University complied with those directions concerns actions taken *after* the original award was made. The two issues may be related, but they are distinct.

¶ 66        Next, the Board and Union argue that, in the course of his compliance review, the arbitrator necessarily interpreted and clarified the award and/or CBA, suggesting this was a legitimate exercise of his authority. Even if these actions were legitimate, the arbitrator did not stop there. The arbitrator expressly "coupled" these new clarifications with a review of the University's conduct and concluded that the University's actions were not sufficient to satisfy the original award. Thus, the arbitrator went beyond mere clarification and interpretation and conducted a compliance review in contravention of the Act.

¶ 67        Lastly, the Board and Union argue that the arbitrator interpreted the CBA as granting him the authority to conduct a compliance review of the original award and that " ' "it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." ' " *Griggsville-Perry Community Unit School District No. 4*, 2013 IL 113721, ¶ 18 (quoting *AFSCME*, 124 Ill. 2d at 255, quoting *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987)). Even if we accepted the arbitrator's interpretation of the CBA, the arbitrator still would have exceeded his authority because implementation of that

interpretation would be inconsistent with the Act, which grants exclusive primary jurisdiction over compliance review to the Board. 115 ILCS 5/10(b) (West 2016); *Rockford*, 165 Ill. 2d at 88 ("Section 10(b) unequivocally states that any provision in a collective-bargaining agreement that is in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of Illinois shall not be effected or implemented. *** We therefore hold that, where a provision in a collective-bargaining agreement is in violation of, or inconsistent with, or in conflict with *any* Illinois statute, section 10(b) prohibits its implementation in an arbitration award. Under these circumstances, an arbitration award would not be binding and could not be enforced." (Emphasis in original and internal quotation marks omitted.)).

¶ 68     We conclude that the supplemental award cannot be construed as effectuating anything other than compliance review with the original award. Because such review is committed to the Board by the Act, the arbitrator exceeded his statutory authority. Given this holding, we need not address the other arguments related to whether the arbitrator exceeded his contractual authority as well.

¶ 69                                    *The Board's Decision*

¶ 70     Having answered the questions of law presented by this case, we now review the Board's application of that law, specifically its decision finding that the University violated section 14(a)(8) and, derivatively, section 14(a)(1) by refusing to comply with the original and supplemental awards. The clearly erroneous standard of review is proper when reviewing a decision of the Board because the decision represents a mixed question of fact and law. *SPEED District 802 v. Warning*, 242 Ill. 2d 92, 112 (2011) (citing *Board of Trustees of the University of Illinois v. Illinois Labor Relations Board*, 224 Ill. 2d 88, 97-98 (2007)). The Board's decision will be reversed as clearly erroneous only if the reviewing court, based on the entirety of the record, is left with the definite and firm conviction that a mistake has been committed. *Board of Trustees of the University of Illinois*, 224 Ill. 2d. at 97-98. "While this standard is highly deferential, it does not relegate judicial review to mere blind deference of an agency's order." *Id.* at 98.

¶ 71     The Board determined that the supplemental award was binding and therefore the University committed an unfair labor practice by admittedly refusing to comply

therewith. Given our holdings above, that decision is clearly erroneous. The Act vests exclusive primary jurisdiction over review of a party's compliance with a binding arbitration award to the Board. The arbitrator exceeded his authority by attempting to exercise the Board's exclusive authority. Thus, the supplemental award he issued based thereon is not binding, and the University cannot have committed an unfair labor practice by refusing to comply with a nonbinding award.

¶ 72 The Board also determined that the University refused to comply with the original award. It came to this decision after refusing to consider evidence presented to it for the first time, stating that review of an arbitration award must be limited to the record that was before the arbitrator. At this point in the analysis, however, the Board was reviewing the University's compliance with the award rather than the substance of the award itself. Furthermore, the Act specifically grants parties the right to present evidence in their defense of an unfair labor practice charge to the Board. 115 ILCS 5/15 (West 2016) ("At hearing, the charging party may also present evidence in support of the charges and the party charged may file an answer to the charges, appear in person or by attorney, and present evidence in defense against the charges."). This is reflected in the Board's own rules: "The Complainant shall present the case in support of the complaint. *The respondent may present evidence in defense against the charges* (Section 15 of the Act)." (Emphasis in original.) 80 Ill. Adm. Code 1120.40(e) (2017). Consequently, the Board has an independent duty to consider any evidence presented to it that is relevant to the determination of whether a party has refused to comply with a binding arbitration award, regardless of whether that evidence was presented to the arbitrator. The Board here clearly erred in doing otherwise. We note, as does the University, that the Board may grant deference to the arbitrator's view of the evidence where appropriate. What it may not do is ignore evidence it is statutorily directed to consider.

¶ 73 CONCLUSION

¶ 74 The Act vests the Board with exclusive primary jurisdiction to review compliance with a binding arbitration award. The arbitrator here exceeded his authority by conducting such a review in contravention of the Act. Consequently, the supplemental award he issued is not binding, the University did not commit an

- 22 -

unfair labor practice in refusing to comply with it, and the Board clearly erred in holding otherwise. The Board also clearly erred in limiting the evidence it would consider in determining whether the University refused to comply with the original award. The Board's opinion and order is vacated, and we remand to the Board with directions to consider all evidence relevant to whether the University violated section 14(a)(8) by refusing to comply with the original award.

¶ 75        Appellate court judgment affirmed.

¶ 76        Board decision vacated and remanded with directions.

¶ 77        JUSTICE NEVILLE, dissenting:

¶ 78        At issue in this case is the scope of an arbitrator's "remedy jurisdiction" under the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/1 *et seq.* (West 2016)). The majority acknowledges that "remedy jurisdiction" exists and its exercise is proper to resolve remedial issues that may arise from the award itself, such as where the arbitrator is called upon to specify what must be done. *Supra* ¶ 5 (citing Am. Bar Ass'n, *Elkouri & Elkouri: How Arbitration Works*, 7-49 to 7-54 (Kenneth May ed., 8th ed. 2016)). However, the majority concludes that the Union improperly attempted to invoke the arbitrator's remedy jurisdiction in this case when it petitioned the arbitrator on September 12, 2017, with respect to the award entered on July 6, 2017. According to the majority, the Union's request was prohibited by section 14(a)(8) of the Act (115 ILCS 5/14(a)(8) (West 2016)) and was, in fact, a charge that the University had engaged in an unfair labor practice, over which the Board has exclusive jurisdiction. I disagree.

¶ 79        When construing a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *Lakewood Nursing & Rehabilitation Center, LLC v. Department of Public Health*, 2019 IL 124019, ¶ 17. The best evidence of this intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* When statutory language is clear and unambiguous, a court may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 12. Moreover, the court

- 23 -

may not rewrite statutory language so that it conforms to the judiciary's view of orderliness and public policy. *Prazen v. Shoop*, 2013 IL 115035, ¶ 35; *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 406 (2010).

¶ 80    The operative provision in this case is section 14(a)(8), which provides that "[r]efusing to comply with the provisions of a binding arbitration award" is an unfair labor practice. 115 ILCS 5/14(a)(8) (West 2016)). The term "refusing" is not defined in section 14(a)(8). But the legislature's employment of undefined terms is commonplace, and courts frequently look to dictionary definitions to ascertain the meaning of such terms. *Barrall v. Board of Trustees of John A. Logan Community College*, 2020 IL 125535, ¶ 18. The plain and ordinary meaning of "refusing" connotes deliberate conduct. See Webster's Third New International Dictionary 1910 (1993) (defining refusing as "to show or express a positive unwillingness to do or comply with," "DENY"). In the context of section 14(a)(8), this definition makes obvious sense. Once a party has expressed or demonstrated a positive unwillingness to comply with the arbitration award, there is nothing more for the arbitrator to do. As the legislature has declared, the refusal itself is an unfair labor practice that falls within the exclusive jurisdiction of the Board.

¶ 81    In my view, that is not what occurred in this case. Here, the University did not simply refuse to comply with the July 2017 arbitration award by denying its validity or by expressing a positive unwillingness to comply with its provisions. Rather, the University took steps in response to the award in an apparent—and seemingly good faith—attempt to comply. The Union then invoked the arbitrator's remedy jurisdiction and requested that he address whether the University's actions were adequate to satisfy the terms of the award. The Union specifically asked the arbitrator to "resolve issues regarding the implementation of the award." In light of these circumstances, I believe that the sufficiency of the University's implementation of the July 2017 arbitration award was within the arbitrator's remedy jurisdiction and that he correctly addressed that question by conducting a hearing and issuing the March 2018 supplemental award.

¶ 82    The majority, however, reaches the opposite result. They do so by rewriting section 14(a)(8). First, the majority makes the sweeping and unsupported statement that "[r]eview over 'refusal' to comply with an arbitration award includes review over 'failure' to comply." *Supra* ¶ 41. The majority then goes even further by

stating that "[r]efusal *or failure* to comply with an award *is specifically designated* an unfair labor practice." (Emphases added.) *Supra* ¶ 41. That, of course, is not true. Section 14(a)(8) makes no mention of a "failure" to comply with an arbitration award. Given that fact, it cannot be said that a "failure" to comply is "specifically designated an unfair labor practice." Yet, the majority inexplicably draws that conclusion.

¶ 83    The terms "refusal" and "failure" are not synonymous. Again, the term "refusing" indicates deliberate conduct. The term "failing," on the other hand, suggests behavior that may or may not be deliberate. See Webster's Third New International Dictionary 814 (1993) (defining failing as "to be inadequate," "to miss attainment," "to neglect to do something," "to be deficient or inadequate"). By equating the two, the majority has inserted terms the legislature did not specify and materially altered the statutory language. In doing so, the majority undermines the intent of the legislature by creating an entirely new category of conduct that now must be considered to be an unfair labor practice under the Act. This newly created category of unfair labor practice will have far-reaching effects in future cases because it will prevent the arbitrator from ascertaining whether the parties have both understood and implemented the terms of an arbitration decision, and it will generate a multiplicity of unfair labor practice proceedings before the Board that could more easily and efficiently be resolved by the arbitrator. This court may not "constructively" add a term or provision to a statute that the legislature plainly chose not to include. See *Zahn v. North American Power & Gas, LLC*, 2016 IL 120526, ¶ 15. Any change in the statutory language must come from the legislature, not this court. See *In re Marriage of Zamudio*, 2019 IL 124676, ¶ 30.

¶ 84    In the context of this case, the distinction between "refusing" and "failing" is more than a matter of semantics. If a party to binding arbitration seeks to comply with an arbitration decision but the efforts taken appear to be inadequate to the other party, it is appropriate to return to the arbitrator to obtain clarification as to what is required.

¶ 85    My colleagues in the majority justify their conclusion in this case by claiming that it " 'promote[s] orderly and constructive relationships between all educational employees and their employers.' " *Supra* ¶ 54 (quoting 115 ILCS 5/1 (West 2016)). I disagree. The approach adopted by the majority achieves the opposite result

because it effectively mandates that virtually all questions regarding the sufficiency of a party's response to an arbitration award be submitted to the Board in an unfair labor practice proceeding. As noted above, it will generate a multiplicity of unfair labor practice proceedings before the Board that could more easily and efficiently be resolved by the arbitrator—the person who is in the best position to clarify what the arbitration award required and whether the actions taken by a party bound by the award are sufficient to satisfy its provisions. And the Board, which one would expect to be vigilant in safeguarding its own exclusive jurisdiction, agrees that the arbitrator had authority to consider the sufficiency of the University's postarbitration actions. I believe that the Board's interpretation of the statutory language is worth noting and is entitled to deference. See *Citibank, N.A. v. Illinois Department of Revenue*, 2017 IL 121634, ¶ 39.

¶ 86     The majority acknowledges that remedy jurisdiction has a proper place in arbitration proceedings and that an arbitrator is permitted to resolve certain disputes arising from the remedy portion of a prior award. Yet, the majority effectively nullifies the essence of that jurisdiction here by holding that any and all failures— without limitation—are refusals and must be submitted to the Board in the form of an unfair labor practice charge. The reasoning of the majority raises the question of when, if ever, an arbitrator can actually exercise the widely recognized remedy jurisdiction.

¶ 87     In sum, I disagree with the majority's holding that the arbitrator lacked authority to address the question of whether the University had adequately implemented the July 2017 binding arbitration award and to issue the March 2018 supplemental arbitration award. In light of the fact that the University admits it refused to comply with the supplemental decision, I would affirm the Board's decision finding that the University committed an unfair labor practice in violation of section 14(a)(8) (115 ILCS 5/14(a)(8) (West 2016)) and, derivatively, section 14(a)(1) (*id.* § 14(a)(1)) of the Act. Accordingly, I respectfully dissent.


¶ 88     CHIEF JUSTICE ANNE M. BURKE joins in this dissent.