# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721

| | |
|---|---|
| Caption in Supreme Court: | GRIGGSVILLE-PERRY COMMUNITY UNIT SCHOOL DISTRICT No. 4, Appellee, v. THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Appellants. |
| Docket Nos. | 113721, 113723 cons. |
| Filed | February 22, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An arbitrator's reinstatement of a school employee was upheld where, although the collective-bargaining agreement was silent as to a dismissal standard, his interpretation that a nonarbitrary and fair hearing was called for drew its essence from the language of the agreement and the parties' bargaining history. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on a petition for review of a decision and order of the Illinois Educational Labor Relations Board. |
| Judgment | Appellate court judgment reversed.<br>Board decision confirmed. |

Counsel on
Appeal

Gilbert A. Cornfield and Andrew B. Epstein, of Cornfield and Feldman, of Chicago, for appellant Griggsville-Perry Federation of Support Personnel IFT-AFT, Local No. 4141.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Eric Truett and Brett E. Legner, Assistant Attorneys General, of Chicago, of counsel), for appellant Illinois Educational Labor Relations Board.

Larry D. Kuster and Ryan D. Byers, of Rammelkamp Bradney, P.C., of Jacksonville, for appellee.

Mitchell E. Roth, of Springfield, and Michael H. Slutsky, of Allison, Slutsky & Kennedy, P.C., of Chicago, for *amicus curiae* Illinois Education Association.

Stanley B. Eisenhammer and Laura J. Pavlik, of Hodges, Loizzi, Eisenhammer, Rodick & Kohn LLP, of Arlington Heights, for *amici curiae* Illinois Association of School Boards and the Illinois Association of School Administrators.

Justices

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, and Theis concurred in the judgment and opinion.

Justice Karmeier specially concurred, with opinion.

## OPINION

¶ 1      At issue in this case is whether respondent Illinois Educational Labor Relations Board (IELRB) erred when it ordered the Griggsville-Perry Community Unit School District No. 4 to comply with a labor arbitrator's award that reinstated a discharged employee. The appellate court held that the IELRB erred in ordering compliance with the award because the arbitrator had exceeded his authority to interpret the collective-bargaining agreement between the school district and the employee's union, and had improperly applied his "own brand of industrial justice" to resolving the employment dispute. 2011 IL App (4th) 110210. For the reasons that follow, we reverse the judgment of the appellate court and confirm the decision of the IELRB.

¶ 2                                         Background

¶ 3         This case arises out of the discharge of Angie Hires by the petitioner, Griggsville-Perry Community Unit School District No. 4 (District). Hires was a "paraprofessional" who worked in the District's elementary school library, helped at recess, and taught keyboarding classes. At the time of her discharge in March of 2008, Hires had worked for the District for 11 years.

¶ 4         Approximately a year before her dismissal, in January 2007, Hires experienced problems in her marital life that left her distraught and unable to sleep. She approached her principal, Andrea Allen, and told her about the problems. Allen was sympathetic and advised Hires to seek counseling.

¶ 5         Over the course of the following year, Hires' marital problems persisted and Allen had several conversations with Hires in which she expressed concern that Hires' personal problems were affecting her demeanor in school. A record of these conversations was kept by Allen in a personal notebook that Allen used to record incidents she thought were important to memorialize. Allen's concerns were stated to Hires in general terms. Allen told Hires, for example, that she should be more "positive" around students, that she should "put on a happy face," and that she should "smile more." Allen also wrote in her notebook that she was doing her best "to be supportive" of Hires.

¶ 6         Two specific incidents regarding Hires were also mentioned by Allen in her notebook. In October of 2007, Allen wrote that a teacher had reported "negativity" from Hires and had questioned having students take keyboarding classes from Hires. This complaint was not conveyed to Hires, and there were no further complaints regarding the keyboarding classes. In addition, in November of 2007, Allen wrote in her notebook that a parent had complained that Hires was not treating "kids ... equally & fairly." The allegation was not investigated and Hires was not told that a complaint had been made.

¶ 7         The personal notebook kept by Allen was not part of Hires' official personnel file; it was a private record to which Hires had no official access. At the time of her discharge, there were three notes in Hires' official personnel file regarding her job performance. The first note is dated March 9, 2007, and reads, "Spoke w/ Angie re: - smiling, treating kids nicer, etc[.] - let her know that bd. mbrs. had concerns." The second note is dated April 28, 2007, and reads, "Reminded Angie, treatment of students still needs work." The third note, dated October 18, 2007, reads, "spoke w/ Angie attitude." These notes were the only mentions of any work-related criticism in Hires' official personnel file.

¶ 8         The District held a regularly scheduled school board meeting in February of 2008. At that time, Allen was asked by the school board whether there were any District staff members about whom she had concerns. Allen retrieved her personal notebook and, after discussing her notes with the board, recommended that Hires be discharged. Hires had not been told that her employment status would be discussed at this meeting and had not been told that Allen would be recommending her discharge.

¶ 9         The superintendent of the District thereafter wrote to Hires that because she did not "relate well" to students and was "not always pleasant" she would be dismissed. The superintendent also informed Hires that she could "respond to these deficiencies" at the

school board meeting in March. The deficiencies referenced in the letter were not particularized further.

¶ 10    Prior to the March school board meeting, Hires' union, respondent Griggsville-Perry Federation of Support Personnel IFT-AFT, Local #4141 (Union), filed a grievance with the District regarding Hires' discharge. The grievance focused on the lack of specificity in the District's allegations that Hires' job performance was deficient, the lack of notice to Hires of any negative notes about her job performance, the lack of any opportunity for Hires to respond to the negative notes, and the lack of adequate warning to Hires of her pending dismissal. The District denied the Union's grievance.

¶ 11    Hires spoke to the school board at the March meeting. No further complaints regarding Hires' job performance were discussed. At the conclusion of the meeting, the school board discharged Hires.

¶ 12    The matter proceeded to arbitration. Following a hearing, the arbitrator found that the collective-bargaining agreement between the District and the Union required that an employee receive a fair hearing before being discharged. According to the arbitrator, the District arbitrarily violated this requirement by deciding to dismiss Hires before first telling her about the concerns regarding her job performance and before affording her an opportunity to speak at the March school board meeting. The arbitrator therefore ordered the District to reinstate Hires.

¶ 13    The District, in response, elected to challenge the validity of the award and therefore chose not to comply with the arbitrator's decision to reinstate Hires. See *Board of Education of Danville Community Consolidated School District No. 118 v. Illinois Educational Labor Relations Board*, 175 Ill. App. 3d 347, 349 (1988) (refusing to comply with an arbitrator's award is the accepted means of challenging its validity). The District asserted that the arbitrator's decision was not based on an interpretation of the collective-bargaining agreement, but was instead drawn from the arbitrator's own perception of what constituted proper policy. In the District's view, the award was thus invalid and not binding.

¶ 14    The Union then filed an unfair labor practice charge with the IELRB, alleging that the District had refused to comply with a binding arbitration award and was therefore in violation of section 14(a) of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a) (West 2008)). Initially, the IELRB remanded the matter to the arbitrator to address the appellate court's decision in *Board of Education of Harrisburg Community Unit School District No. 3 v. Illinois Educational Labor Relations Board*, 227 Ill. App. 3d 208 (1992). The arbitrator did so, and issued an amended award that again ordered Hires' reinstatement. Upon review, the IELRB confirmed the amended award.

¶ 15    The District appealed the IELRB's decision to the appellate court pursuant to Illinois Supreme Court Rule 335 (eff. Feb. 1, 1994), and section 16(a) of the Act (115 ILCS 5/16(a) (West 2008)). The court, with one justice dissenting, reversed the decision of the IELRB. 2011 IL App (4th) 110210. The appellate court held that the arbitrator's reading of the collective-bargaining agreement was "clearly erroneous" and that the District had complied with all of its requirements. *Id*. ¶ 21. The court also held that in ordering Hires' reinstatement, the arbitrator had exceeded his authority to interpret the collective-bargaining

agreement and had improperly applied his "own brand of industrial justice" to the dispute. *Id*. ¶ 17. The appellate court thus concluded that the IELRB erred in ordering the District to comply with the arbitrator's award.

¶ 16 Both the Union and the IELRB filed petitions for leave to appeal in this court. We allowed both petitions and consolidated the cases for review. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We also allowed *amicus curiae* briefs to be filed by the Illinois Education Association in support of the Union, and the Illinois Association of School Boards and the Illinois Association of School Administrators in support of the District.

¶ 17                                                   Analysis

¶ 18 "[A] court's review of an arbitrator's award is extremely limited." *American Federation of State, County & Municipal Employees v. State*, 124 Ill. 2d 246, 254 (1988) (*AFSCME*). Where " 'the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.' " *Id.* at 255 (quoting *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987)). Thus, a court has " 'no business weighing the merits of the grievance.' " *Misco*, 484 U.S. at 37 (quoting *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960)).

¶ 19 " 'Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.' " *AFSCME*, 124 Ill. 2d at 254-55 (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

¶ 20 Establishing that an arbitrator has failed to interpret the collective-bargaining agreement but has, instead, imposed his own personal views of right and wrong on an employment dispute is "a high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. ___, ___, 130 S. Ct. 1758, 1767 (2010). It is not enough to show that the arbitrator "committed an error—or even a serious error." *Id.* at ___, 130 S. Ct. at 1767. It must be shown that there is no "interpretive route to the award, so a noncontractual basis can be inferred and the award set aside. [Citations.] The zanier the award, the less plausible it becomes to ascribe it to a mere error in interpretation rather than to a willful disregard of the contract." *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991). Whether an arbitrator has exceeded the scope of his authority and has reached a decision that fails to draw its essence from the collective-bargaining agreement is a question of law. See, *e.g.*, *Island Creek Coal Co. v. District 28, United Mine Workers of America*, 29 F.3d 126, 129 (4th Cir. 1994).

¶ 21 In the case at bar, the arbitrator found that the District violated section 2.6 of the parties' collective-bargaining agreement. Section 2.6 provides:

> "When a member of the bargaining unit is required to appear before the Board of Education concerning any disciplinary matter, the staff member shall be given

reasonable prior written notice of the reasons for such meeting and shall be entitled to have a personal representative at said meeting, if so requested by employee."

The arbitrator explained the basis of the violation:

"[Section 2.6 of the] collective bargaining agreement requires 'written notices of the reasons for' the employee being heard before the school board. The District maintains that the written notice it provided was adequate. The Arbitrator disagrees. The notice merely stated that the board proposed to dismiss [Hires] for 'deficiencies' in that she did not 'relate well' to students and 'was not always pleasant.' *** [S]uch generalized characterizations are impossible to defend against, which was one of the grounds of the union's initial grievance. It bears repetition that adequate notice is a fundamental element of the hearing process. When what is to be heard are allegations of misconduct or poor or inadequate performance the accused employee must be able to 'marshal evidence and prepare his [or her] case so as to benefit from any hearing that was provided.' Henry J. Friendly, '*Some Kind of Hearing*', [123 U. Pa. L. Rev. 1267, 1281 (1975)]. At a minimum, [Hires] was entitled to the specifics of the factual allegations giving rise to the generalized conclusion she was confronted with - the names, dates, and circumstances of the allegations, precisely what *facts* were reported of her and by whom, and, where the facts are contested, to confront her accusers and adduce any evidence in her defense."

¶ 22    The appellate court rejected the arbitrator's conclusion that section 2.6 had been violated. After reviewing the actions taken by the District, the appellate court found that "[t]he District complied with all the requirements of section 2.6 in this case" (2011 IL App (4th) 110210, ¶ 20), and held that "[t]he arbitrator's conclusion that the procedure here was somehow 'deficient' is clearly erroneous" (*id.* ¶ 21). However, this was not the proper standard of review.

¶ 23    The correctness of the arbitrator's interpretation of section 2.6 was not a matter for the appellate court's consideration. See *AFSCME*, 124 Ill. 2d at 255. Rather, the question for the appellate court was solely whether the arbitrator's decision drew its essence from the collective-bargaining agreement. In this case, the arbitrator's determination that the District had violated section 2.6 was clearly rooted in an interpretation of the contract. See, *e.g.*, *Board of Education of Harrisburg Community Unit School District No. 3 v. Illinois Educational Labor Relations Board*, 227 Ill. App. 3d 208 (1992) (arbitrator had the power to determine what the words "due process" meant within the meaning of a collective-bargaining agreement). The appellate court therefore erred in reviewing and rejecting the correctness of the arbitrator's decision that the District violated section 2.6 of the collective-bargaining agreement.

¶ 24    However, the District also argued to the arbitrator that, even if it had violated section 2.6 of the collective-bargaining agreement, any such violation was of no moment because Hires was an at-will employee. The District noted that, during the negotiations over the collective-bargaining agreement, the Union had proposed what was, in effect, a provision that required dismissal be based on just cause, while the District had proposed a hearing procedure available only to employees of more than five years service, and a provision allowing

dismissal of those with fewer years of service for any reason in the discretion of the District. Neither proposal was adopted. Thus, the collective-bargaining agreement contained neither an express prohibition on discharge without just cause nor a reservation to the District of nonreviewable discretion to discharge. Because the agreement was silent on the question of a standard for dismissal, the District argued that Hires was necessarily an at-will employee. Therefore, the District reasoned, Hires could have been dismissed for any reason, regardless of whether the District failed to provide her with a proper hearing under section 2.6.

¶ 25    The arbitrator rejected this reasoning, finding that section 2.6 would be rendered meaningless if Hires was an at-will employee. The arbitrator explained:

> "If [Hires] had actually been presented with a set of allegations [such as] e.g., that 'on X date you uttered the following words to student Y'—and had she proven in a §2.6 hearing that that episode never occurred, that she was on sick leave at the time, or that the student fabricated the report—according to the District it could still dismiss her once the procedural formality of the hearing had been observed. That would turn the hearing required by §2.6 into a meaningless formality. When a collective bargaining agreement requires a hearing it requires a meaningful hearing. It cannot be assumed *a priori* that by agreeing to §2.6 the parties intended to require a potentially meaningless formalism."

The arbitrator then went on to conclude that, because a just-cause standard for dismissal was expressly discussed during negotiations over the collective-bargaining agreement but was not adopted, the District could not be held to such a standard. Instead, the arbitrator concluded that dismissals under the agreement were governed by a standard of arbitrariness. Again, the arbitrator explained:

> "In *Ex-Cell-O Corp.*, 21 LA 659 (Russell A. Smith, Arb. 1953), for example, Russell Smith, former Dean of the University of Michigan Law School and one of the architects of the American system of labor arbitration, faced the question of whether a probationary employee could contest his termination. As here, the just cause standard did not apply. As here, there was no reservation by management of unreviewable power [to discharge]. Arbitrator Smith noted the conundrum:

>> 'If the agreement between the parties provided expressly that a management decision to discharge such an employee is final, the arbitrator might technically have jurisdiction to hear an appeal of such a discharge, but he would have no power to set aside the management decision. The agreement between the parties to this case, however, contains no such express provision, nor, on the other hand, does it expressly limit the authority of management in the discharge of such employees. *The intent of the parties with respect to the problem must be implied from what is stated in the agreement* and, to the extent proper, from practice thereunder.'

> *Id*. at 664 (emphasis added). He concluded that the collective agreement accorded

>> 'management a considerable measure of discretion in making the decision whether the probationer meets the full expectations of the Company as an employee. Therefore, in the Arbitrator's opinion, a management decision to

discharge such an employee should not be set aside unless it was arbitrary, capricious or discriminatory.' "

¶ 26    Applying a standard of arbitrariness to the District's decision to discharge Hires, the arbitrator in this case concluded that the District had violated the collective-bargaining agreement. According to the arbitrator, Hires had been confronted with nothing more than conclusory assertions that she did not "relate well," lacked "positivity," and was not "always pleasant." Moreover, in the view of the arbitrator, "the school board acted to dismiss on the basis of uninvestigated and so unconfirmed parental complaints made to individual school board members the specifics of which - if any conduct was specified at all - were never shared with [Hires]. She was given a hearing after the board had decided to dismiss, in which, in effect, the burden rested on her somehow to dispel these characterizations unconnected to any specific words or conduct save, again, for her failure to sufficiently smile." Thus, the arbitrator determined that no other conclusion could "be drawn from the record but that the District's decision was procedurally and substantively arbitrary."

¶ 27    The arbitrator's conclusion that Hires could not be an at-will employee in light of section 2.6 and the arbitration procedures contained in the collective-bargaining agreement finds ample support in case law. See, *e.g.*, *PaineWebber, Inc. v. Agron*, 49 F.3d 347, 352 (8th Cir. 1995) (the use of the arbitration procedure as a means of settling employment-related disputes "necessarily alters the employment relationship from at-will to something else—some standard of discernable cause is inherently required in this context where an arbitration panel is called on to interpret the employment relationship"); *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312-13 (7th Cir. 1981); *Smith v. Kerrville Bus Co.*, 709 F.2d 914, 917-18 (5th Cir. 1983). Nevertheless, the appellate court in this case concluded that the arbitrator exceeded his authority to interpret the collective-bargaining agreement when he determined that Hires was not an at-will employee. According to the appellate court, the arbitrator was required to read the agreement as imposing no standard for dismissal, even if that meant that the section 2.6 hearing was rendered a "meaningless formality." 2011 IL App (4th) 110210, ¶ 17. In support, the appellate court pointed to *Board of Education of Harrisburg Community Unit School District No. 3 v. Illinois Educational Labor Relations Board*, 227 Ill. App. 3d 208 (1992).

¶ 28    In *Harrisburg*, the employing school district ended a teacher's assignment to the extracurricular position of basketball coach. The teacher's union filed a grievance over the decision. During negotiations over the collective-bargaining agreement, the union had sought to include a provision requiring just cause for dismissal of employees. That provision was not adopted. However, the agreement did include a provision which stated that "due process" would be afforded to teachers.

¶ 29    The arbitrator found that the school district violated the due process provision in the agreement by failing to give the teacher an adequate hearing before the school board before terminating his extracurricular assignment. However, in formulating a remedy for the teacher, the arbitrator went further and concluded that the school district was required to show just cause before discharging the teacher from his extracurricular position. *Harrisburg*, 227 Ill. App. 3d at 216.

¶ 30    The appellate court rejected this latter conclusion. The court noted that without a just-cause standard the benefits of the hearing before the school board would be "somewhat limited." *Id*. at 214. Nevertheless, because a just-cause standard had been expressly discussed during negotiations and had not been adopted, the court concluded it could not be read into the parties' agreement. By doing so, the court held, the arbitrator had gone beyond the terms of the collective-bargaining agreement and imposed his own views on the employment dispute. *Id*. at 215.

¶ 31    *Harrisburg* thus stands for the proposition that, in those instances where bargaining history establishes that a just-cause standard was discussed but not adopted, the arbitrator is precluded from incorporating such a standard into a collective-bargaining agreement. *Harrisburg* does not state, however, that an arbitrator is precluded from finding any standard for dismissal at all. Nor does *Harrisburg* state that an arbitrator must recognize that an employee is employed at-will even if doing so would render a portion of the collective-bargaining agreement meaningless. The arbitrator here declined to read a just-cause requirement into the parties' agreement in light of the relevant bargaining history but, instead, concluded that the District's decision to discharge Hires was subject to a standard of arbitrariness. This was entirely consistent with *Harrisburg*.

¶ 32    The appellate court in this case also determined that although the arbitrator stated he was not imposing a just-cause standard, he merely "used other language" to accomplish the same thing. 2011 IL App (4th) 110210, ¶ 17. We disagree. The arbitrator was explicit in applying a standard of arbitrariness to the District's decision to discharge Hires.

¶ 33    The arbitrator's decision in this case was based on the language of the contract and the parties' bargaining history. As the arbitrator's decision drew its essence from the collective-bargaining agreement, the IELRB did not err in ordering the District to comply with the arbitrator's award.

¶ 34                                    Conclusion

¶ 35    For the foregoing reasons, the judgment of the appellate court is reversed. The decision of the Illinois Educational Labor Relations Board is confirmed.

¶ 36    Appellate court judgment reversed.

¶ 37    Board decision confirmed.

¶ 38    JUSTICE KARMEIER, specially concurring:

¶ 39    Though not mentioned in the majority's disposition, it bears noting that when we grant leave to appeal from a judgment of the appellate court in an administrative review case, as we did here, it is actually the decision of the administrative body that is before us for review, not the judgment of the appellate court. *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). I agree with the majority's conclusion that the decision of the IELRB in this case should be upheld. I write separately to clarify one important point.

¶ 40    Section 2.6 of the collective-bargaining agreement between the District and Hires' union applies, by its terms, only when "a member of the bargaining unit is *required* to appear before the Board of Education concerning any disciplinary matter." (Emphasis added.) In this case, Hires was not a teacher in continued contractual service within the meaning of the School Code (see 105 ILCS 5/24-11 (West 2010)), and so far as the record shows, there was no requirement, statutory, contractual, or otherwise, that Hires appear before the Board. The Board merely gave her the option of requesting a pretermination hearing after she was advised that it intended to terminate her at its March 19 meeting, and she elected to exercise the option.

¶ 41    Had invocation of section 2.6 been challenged on this basis below, I believe the ultimate disposition of the case would have been different. But it was not raised. Applicability of section 2.6 of the collective-bargaining agreement is undisputed. Rather, the point of contention has been how the provisions of section 2.6 should be interpreted and applied to Hires' situation. That being so, and in light of the limited scope of our review in cases involving arbitration awards, I agree with the majority that we should confirm the IELRB's decision ordering the District to comply with the arbitrator's award.