**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220193-U

Order filed February 9, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE VILLAGE OF BOLINGBROOK, | ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) ) | Will County, Illinois. |
| v. | ) ) ) | |
| METROPOLITAN ALLIANCE OF POLICE, BOLINGBROOK POLICE OFFICERS CHAPTER #3 | ) ) ) ) | Appeal No. 3-22-0193 Circuit No. 21-CH-422 |
| Defendant-Appellee. | ) ) ) ) | The Honorable John C. Anderson, Judge, presiding. |

_____

JUSTICE ALBRECHT delivered the judgment of the court.
Presiding Justice Holdridge and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: The arbitrator did not exceed his authority when he resolved the question submitted to him by interpreting the terms of the contract.

¶ 2      Plaintiff, the Village of Bolingbrook (the Village), brought an action in Will County

circuit court to vacate an arbitrator's decision in favor of Metropolitan Alliance of Police,

Bolingbrook Police Officers Chapter #3 (MAP). The circuit court declined, thereby sustaining the Union's grievances. The Village appeals. We affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        The Village of Bolingbrook police officers are represented by MAP. The Village and MAP entered into a collective bargaining agreement (CBA) governing the period between May 2018 and April 2023 concerning the terms of employment between the Village and members of MAP. According to the Village, its Director of Public Safety learned in June 2018 that the Village's police department and fire department calculated the accrual of sick leave, vacation leave, and holiday pay differently for members of their respective unions who were receiving workers' compensation disability benefits for longer than a year.

¶ 5        The Director then sought an opinion from the Village's attorney.  The attorney opined that, pursuant to the Public Employee Disability Act (PEDA) (5 ILCS 345/1 *et seq.* (West 2018)) and the Village's employee manual, employees do not accrue additional leave benefits following the expiration of PEDA leave, and he instructed the police department to cease recording benefit leave for the applicable employees.

¶ 6        PEDA provides that when a police officer is injured in the line of duty, the Village must continue the officer's full pay for one year. 5 ILCS 345/1 *et seq.* (West 2018). Thereafter, the officer is compensated under workers' compensation rates. During the period officers are paid pursuant to PEDA, they are to maintain their full employment status and benefits associated therewith.

¶ 7        Members of the police department filed grievances against the Village due to the actions taken after the attorney issued his opinion. The grievances alleged that the Village made

unilateral changes to the officers' benefits, violating the terms of the CBA. The Village and MAP did not settle the grievance and proceeded to arbitration.

¶ 8        The parties jointly selected an arbitrator. At the hearing, MAP argued that the question presented for the arbitrator to resolve was "did the Village have authority on October 23rd of 2018, to change the policy concerning benefit accrual for officers injured on duty[?] And if not, what is the proper remedy[?]" In support of its position that its members continue to accrue sick days, vacation days, and holiday pay after the one-year period set forth in PEDA, it relied on Section 16.1 of the CBA, which provided:

> Section 16.1 General Leave
>
> In no case shall benefits accrue to a Police Officer while he is on an extended leave of absence. This clause applies to unpaid leaves of absence; it does not apply to workman's compensation leave.

¶ 9        The Village stated the issue presented to the arbitrator as follows: "What we are talking about this morning is the Village of Bolingbrook's disability policy when PEDA expires and Workers' Compensation takes over." It relied upon Section 8.6 of the CBA, which provided:

> Section 8.6 Employee Disability
>
> The Employer agrees that they shall maintain current disability policy as outlined in the Village Rules and Regulations manual.

¶ 10        The Village asserted that Section 8.6 of the CBA incorporated the Village manual into the CBA and that the manual's provisions therefore controlled. The other relevant provisions of the Village's Rules and Regulations manual state:

> Conflict with Collective Bargaining Agreements

The requirements of these Rules and Regulations shall not supersede the provisions of written agreements between the Village and employee bargaining units.

\*\*\*

WORKER'S COMPENSATION/DISABILITY

All employees injured while in the performance of their duties shall be compensated with the Worker's Compensation benefits as outlined by State Statute and funded by the Village of Bolingbrook.

\*\*\*

EXTENDED LEAVE/ACCRUAL OF BENEFITS AND ADDITIONAL COMPENSATION

Employees on extended leave, including worker's compensation \*\*\* or such other leave as may be authorized by the Mayor for periods exceeding thirty (30) days, shall be subject to the following:

\*\*\*

2. No sick leave will be accrued while an employee is on extended leave \*\*\*

3. Employees shall not accrue vacation or holiday leave while on extended leave.

¶ 11    At the hearing, the Village Administrator, who was the former Director of Public Safety, testified that the Village did not have a policy on accrual of benefits after the one-year period provided by PEDA, which is why he consulted with the attorney. The attorney's memorandum stated that "the Village policy going forward" would be that benefit accrual ceased when PEDA leave expired. The policy set forth in the attorney's memorandum was put into effect in January 2019.

¶ 12    At the same time the Village attorney issued his opinion, the parties were negotiating for their next CBA. Benefit accrual was not discussed during negotiations. MAP informed the arbitrator that it did not raise the benefit accrual issue because it believed that the contract language already addressed it. The Village stated that it did not raise the issue because there were "bigger issues" to discuss.

¶ 13    The arbitrator noted that MAP relied upon Section 16.1 of the CBA, which specifically excluded workers' compensation leave from its extended leave benefit accrual prohibition. Alternatively, the Village relied upon Section 8.6, which incorporated the manual's provision including workers' compensation leave in its ban of benefit accrual.

¶ 14    The arbitrator sustained MAP's grievance, finding that a conflict existed between the CBA and the Village's policy manual regarding when benefit leave accrued during extended leave. First, he found that Section 16.1 of the CBA specifically excluded workers' compensation leave from its prohibition on benefit leave accrual, while the manual expressly included its ban on benefit leave accrual. That conflict, the arbitrator found, must be resolved in favor of the CBA, because the manual also provided it would not supersede any written agreement between the Village and its employees' bargaining units. Any conflicts between the manual and CBA must follow the CBA's provisions. Thus, under the CBA, benefit leave must still accrue for those on workers' compensation leave even after PEDA leave expires. Therefore, the arbitrator found that the Village violated the CBA when it unilaterally changed contractual terms regarding benefit accrual during post-PEDA workers' compensation leave.

¶ 15    The Village subsequently filed an application and complaint to vacate the arbitrator's decision and award. After briefings and oral arguments, the court issued an order denying the

5

Village's complaint. In so finding, it stated that the arbitrator's award was supported by the language of the CBA. The Village now appeals.

¶ 16                                                    II. ANALYSIS

¶ 17         On appeal, the Village argues that the arbitrator erred in sustaining the grievances. Specifically, the Village asserts the arbitrator's decision should be vacated because the arbitrator exceeded his authority by ignoring the provisions in the Village manual to read into the CBA a provision that did not exist. Rather than interpret the CBA, the Village argues that the arbitrator ignored the plain language to reach the outcome he desired. Further, because the arbitrator exceeded his authority, his decision did not draw its essence from the collective bargaining agreement. The Village asks that we reverse the circuit court's judgment and vacate the arbitrator's decision.

¶ 18         It is well established that judicial review of an arbitrator's review is extremely limited. *American Federation of State, County & Municipal Employees v. State of Illinois*, 124 Ill. 246, 254 (1988) (*AFSCME*). The award must be construed as valid whenever possible. *Id.* The standard of limited review reflects the legislature's intent through the Uniform Arbitration Act to provide finality for labor disputes submitted to arbitration. See 710 ILCS 5/12 (West 2018); *American Federation of State, County & Municipal Employees, AFL-CIO v. Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996) (*AFL-CIO*). An arbitration award should be disturbed only in cases of fraud, corruption, partiality, misconduct, mistake, or for failure to submit the issue to arbitration. *AFL-CIO*, 173 Ill. 2d at 304. On review, the court must enforce a labor-arbitration award if the arbitrator acted within the scope of his authority and the award draws its essence from the parties' collective-bargaining agreement. *Id.* at 304-05.

6

¶ 19     The authority given to the arbitrator is determined by the provisions of the parties' agreement. *Village of Posen v. Illinois Fraternal Order of Police Labor Council*, 2014 IL App (1st) 133329, ¶ 37. "On judicial review, there is a presumption the arbitrator did not exceed his authority." *Decatur Police Benevolent and Protective Ass'n Labor Committee v. City of Decatur*, 2012 IL App (4th) 110764, ¶ 21. An arbitrator exceeds his authority when he decides matters that were not submitted to him for resolution. *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 419 (1979) (*District No. 508*). Further, the scope of an arbitrator's power is dependent upon what the parties agreed to submit to arbitration. *Id.* Because the parties agreed to have disputes settled through arbitration, the court may not overrule an award simply because it would interpret the contract differently. *Everen Securities, Inc. v. A.G. Edwards and Sons, Inc.*, 308 Ill. App. 3d 268, 273 (1999). However, if the arbitrator exceeded his authority, the award must be vacated. *AFL-CIO*, 173 Ill. 2d at 304-05.

¶ 20     Here, the issue submitted to the arbitrator to resolve was whether the Village's policy to terminate benefit leave accrual after PEDA leave expired for members of MAP on workers' compensation after January 2019, made in response to its attorney's opinion, violated the terms of the CBA, and if so, what the appropriate remedy was. The arbitrator's written decision found that the CBA excluded workers' compensation leave from the prohibition on benefit accrual for those on extended leave, thus employees on workers' compensation were still entitled to benefit leave accrual when PEDA benefits expired. Further, the arbitrator found that the change in policy created by the attorney's opinion violated the terms of the CBA. Clearly, the arbitrator answered the question presented to him.

7

¶ 21    Once it is determined that the arbitrator answered the question submitted, the court may review the arbitrator's decision only to determine whether the award "draws its essence" from the collective bargaining agreement. *AFSCME*, 124 Ill. 2d at 254-55. Questions as to how the collective bargaining agreement should be interpreted are not for the court to decide as the parties bargained for the arbitrator to decide them. *AFL-CIO*, 173 Ill. 2d at 305. "[E]ven where the award is based upon the arbitrator's misreading of the contract, the court must uphold the award so long as the arbitrator's interpretation is derived from the language of the contract." *Amalgamated Transit Union, Local 241 v. Chicago Transit Authority*, 342 Ill. App. 3d 176, 180 (2003).

¶ 22    The parties have contracted to have disputes settled by an arbitrator rather than the court. It is therefore the arbitrator's view of the facts and interpretation of contract that the parties have agreed to accept. *Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721, ¶ 18 (*Griggsville*). We will inquire into the merits of the arbitrator's interpretation only to the extent necessary to determine whether the decision drew its essence from the agreement. *District No. 508*, 74 Ill. 2d at 421; *Griggsville*, 2013 IL 113721, ¶ 18.

¶ 23    The Village argues that the arbitrator's award did not draw its essence from the CBA because the arbitrator modified the language of Section 16.1 of the CBA to read into it that anyone on workers' compensation leave can still receive benefit accrual. However, the Village cannot merely argue that the arbitrator committed error; it must show that there is no "interpretive route to the award, so a noncontractual basis can be inferred and the award set aside." *Id.* ¶ 20 (quoting *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F. 2d 1501, 1506 (1991)).

8

¶ 24      It is clear from the written ruling of the arbitrator that he did not manifestly disregard the law or the CBA in making his decision. In ruling in favor of the Union, the arbitrator specifically discussed the issue presented to him – whether leave benefits continue to accrue after PEDA leave expires. The arbitrator interpreted the relevant provisions of the CBA, which he found in Section 16.1. He further reviewed the relevant provisions in the Village manual that were incorporated into the CBA and determined that a conflict existed between these provisions. In resolving the conflict, he found in favor of the language of the CBA due to the provision in the manual clearly stating that it did not supersede any collective bargaining agreement the Village may have with its employees. The arbitrator rejected the Village's argument that the language in the manual controlled. The arbitrator's decision was not a result of exceeding his authority, but rather the arbitrator's interpretation of the language of the agreement within the context of what he understood the law to be.

¶ 25      After having reviewed the record and the arbitrator's decision, we find that the Village's argument must be rejected. Despite the Village's arguments to the contrary, it is clear from his decision that the arbitrator did not exceed his authority. There is no evidence that the arbitrator disregarded any applicable rules, regulations, or provisions of the CBA. It is clear the arbitrator's written decision derived from his interpretation of the CBA and its interaction with the Village manual. It is not for us to decide whether that interpretation was correct. See *District No. 508*, 74 Ill. 2d at 421; *Griggsville*, 2013 IL 113721, ¶ 18. The arbitrator's decision addressed the essence of the contract and answered the question submitted by the parties. Because of this, the Village's assertion that he exceeded his authority must be rejected, and his decision upheld.

¶ 26                                    III. CONCLUSION

¶ 27      For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 28    Affirmed.