2026 IL App (1st) 251223-U

No. 1-25-1223

Order filed June 25, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| TRITON COMMUNITY COLLEGE, DISTRICT 504, | ) ) ) | Petition for Review of an Order of the Illinois Educational Labor Relations Board. |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | |
| COOK COUNTY COLLEGE TEACHERS UNION, LOCAL 1600, IFT-AFT, AFL-CIO, and THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD, | ) ) ) ) ) ) | |
| Respondents-Appellees. | ) | Charge No. 2022-CA-0030-C |

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held:*  We affirm the decision of the Illinois Educational Labor Relations Board finding that Appellant violated the Illinois Educational Labor Relations Act (115 ILCS 5/14(a)(1), (a)(8) (West 2020)) by refusing to comply with the terms of a binding arbitration award; Board decision affirmed.

¶ 2    Appellee, Cook County College Teachers Union, Local 1600, IFT-AFT, AFL-CIO (Union), filed an unfair labor practice charge with the Illinois Educational Labor Relations Board (Board) against Appellant, Triton Community College, District 504 (Triton). The Union alleged

that Triton violated section 14(a)(8) and, derivatively, section 14(a)(1), of the Illinois Educational Labor Relations Act (Act) (115 ILCS 5/14(a)(1), (a)(8) (West 2020)) by failing to comply with the terms of a binding arbitration award. The Board agreed and ordered Triton to comply with the award. Triton then filed a petition for direct administrative review of the Board's decision and order with this court. On direct administrative review, Triton contends the Board erred because it failed to find that the arbitrator exceeded its authority such that the award was not binding. For the reasons that follow, we affirm the Board's decision.

¶ 3                                    I. BACKGROUND

¶ 4        Triton and the Union are parties to a collective bargaining agreement (CBA) that governs various issues related to full-time faculty members, including conditions of employment and teaching load. In January 2020, Triton appointed Geri Brewer, a full-time faculty member subject to the CBA, to serve as the chair of the nursing department, and provided her five lecture hour equivalents (LHE) release time per semester and compensation pursuant to Article III(K) of the CBA, which addresses reduction in teaching load and compensation for department chairpersons.

¶ 5        In April 2020, the Union filed a grievance with Triton, alleging that Triton violated the past practice provision of Article I(K) of the CBA when it did not grant Brewer "full release" of her teaching load for the spring 2020 semester. Specifically, the Union alleged that "from 2007 to fall 2019 ([12 ½] years, or 25 semesters), the nursing chair has received full release 60% or more of the time."

¶ 6        Article I(K) of the CBA, which addresses "past practice," provides that,

"Except as this Agreement shall herein provide, all terms and conditions of employment applicable on the effective date of this Agreement as established and in force

on said date shall continue to be so applicable during the term of this Agreement. Unless otherwise provided in this Agreement, nothing herein shall be interpreted or applied so as to eliminate, reduce, or otherwise detract from any faculty benefits regarded by either party as past practice, defined below, existing prior to the effective date of this Agreement."

The provision then states that the parties agree "that any past practices which may arise under the provisions of and during the term of this agreement, or at any time prior thereto shall conform" to four elements, including:

"1. The asserted past practice must be reasonably consistent;

2. The asserted past practice must be clearly articulated in an ascertainable manner and known by both parties to the agreement;

3. The asserted past practice shall have been acted upon; and

4. The asserted past practice must be readily ascertainable over a reasonable period of time as a reasonably fixed and established practice. Past Practice shall be limited to actions that have occurred within the 20 years immediately preceding the alleged grievance. For an incident to be considered as a past practice, it must have occurred 60% of the time as opposed to it not occurring or being implemented in another manner."

¶ 7        Triton denied the Union's grievance, stating that it awarded Brewer five LHE of release time pursuant to Article III(K) of the CBA, which provides a table showing the number of hours in reduction in teaching load per semester the department chair is entitled to based on the number of full-time faculty supervised. Additionally, Triton concluded that the Union failed to demonstrate the elements necessary to establish a past practice under Article I(K) of the CBA. It noted that a

past practice must be considered over a 20-year period and that, during the relevant 20-year period, the chair of the nursing department received "less than full release 64% of the time."

¶ 8    The Union continued the grievance through the procedure outlined in the CBA, and Triton continued to deny it at each step. The Union then filed a demand for arbitration pursuant to the CBA, and the parties appointed an arbitrator.

¶ 9    Following an arbitration hearing and the parties' submissions of post-hearing briefs, the arbitrator issued a written award sustaining the Union's grievance and concluding that Triton improperly denied Brewer full release time for the spring 2020 semester.

¶ 10    In the arbitrator's written decision, it explained that it was uncontested that Brewer was "entitled to at least five hours of [r]elease [t]ime" for the spring 2020 semester pursuant to Article III(K). The arbitrator, however, noted that the Union's issue "goes beyond the minimum required," as it contended it was entitled to full release time pursuant to past practice.

¶ 11    The arbitrator then highlighted that the case involved the interpretation of the past practice provision in Article I(K) of the CBA. It concluded that the first three elements were met, finding that the practice of granting full release time between 2007 and 2019 was reasonably consistent, clearly articulated in an ascertainable manner, and known by both parties to the agreement.

¶ 12    The arbitrator then explained that the question at issue was whether the Union met the fourth element, which stated:

> "The asserted past practice must be readily ascertainable over a reasonable period of
>
> time as a reasonably fixed and established practice. Past Practice shall be limited to actions
>
> that have occurred within the 20 years immediately preceding the alleged grievance. For

an incident to be considered as a past practice, it must have occurred 60% of the time as opposed to it not occurring or being implemented in another manner."

¶ 13    The arbitrator summarized the parties' arguments regarding the fourth element as follows. The Union argued it established a past practice because from 2007 to 2019, the chair of the nursing department received full release time in 15 out of 25 semesters, or 60% of the time. Triton argued, however, that under the language of the past practice provision, the parties must review "the entire 20-year period" before the date the grievance was filed to determine whether the 60% threshold is met. According to Triton, the 60% threshold was not met here, and Brewer was entitled to only five hours of release time pursuant to Article III(K) of the CBA.

¶ 14    The arbitrator also summarized the testimony from the witnesses who were involved in negotiating the past practice provision of the CBA. The arbitrator noted that the parties amended the CBA in 2009 "to limit the time threshold to 20 years" because prior to this amendment, there was no time limitation, and the Union had been successful in numerous arbitrations in which it asserted a past practice. The arbitrator also reviewed each sentence contained in the fourth element of the past practice provision and expressly stated that it "carefully considered all of these particular sentences and reviewed the evidence for their collective meaning."

¶ 15    After reviewing the evidence, the arbitrator found that the term "within" 20 years in the fourth element means "that the practice must occur within, but not transcend, the entire 20-year period." The arbitrator commented that its determination is based in part on the preceding sentence that stated, "[t]he asserted past practice must be readily ascertainable over a reasonable period of time as a reasonably fixed and established practice." The arbitrator reasoned that, if the parties had intended for the entire 20-year period before the alleged grievance was filed to be considered in determining a past practice, "they could have simply specified that the past practice would have

5

had to be in effect for the 20 years preceding a grievance" or "that the time period was 60% of the prior 20 years." Rather, the arbitrator noted, the parties used the terms "reasonable period of time" and "within 20 years." The arbitrator concluded, therefore, that a "past practice need not encompass a full 20 years, but merely must have existed during the twenty years preceding the grievance."

¶ 16    The arbitrator then found that, here, during the 12½-year period from 2007 to 2019, Triton granted the chair of the nursing department full release time in 15 out of 25 semesters, or 60% of the time. As such, the arbitrator concluded that the Union proved that full release time for the chair of the nursing department qualified as a legitimate past practice, as it met all four requirements set forth in the past practice provision. The arbitrator therefore concluded that Triton violated the CBA when it denied Brewer full release time for the spring 2020 semester.

¶ 17    Thereafter, Triton refused to comply with the arbitrator's award. The Union filed an unfair labor practice charge with the Board, alleging that Triton violated section 14(a)(8), and derivatively section 14(a)(1), of the Act by refusing to comply with the arbitrator's award. See 115 ILCS 5/14(a)(1), (a)(8) (West 2020) (stating that educational employers are prohibited from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act" and from "[r]efusing to comply with the provisions of a binding arbitration award").

¶ 18    The Board's Executive Director conducted an investigation pursuant to the Act, issued a complaint and scheduled the case for a hearing before an administrative law judge (ALJ). The parties submitted a stipulated record and briefs to the ALJ and waived their right to a hearing.

¶ 19    In January 2025, the ALJ issued its recommended decision and order, concluding that Triton violated sections 14(a)(1) and 14(a)(8) of the Act by refusing to comply with the arbitration award. The ALJ noted that, as an initial matter, Triton's position appeared to have merit because

the CBA contained "specific language governing release time in Article III(K), limiting to five hours the release time to which Brewer was entitled." The ALJ explained that the arbitrator "acknowledged the language of [Article] III(K)" but noted that Article I(K) of the CBA provided that, "[u]nless otherwise provided in this Agreement, nothing herein shall be interpreted or applied so as to eliminate, reduce, or otherwise detract from any faculty benefits regarded by either party as past practice, defined below, existing prior to the effective date of this Agreement." The ALJ stated that Article I(K) "provided the path for [the arbitrator] to examine whether the Union's claim of a past practice existed, governing the release time to which Brewer was entitled."

¶ 20    The ALJ highlighted that, "[a]lthough it is possible to interpret the language at issue differently than [the arbitrator], there is no fault in the manner in which he interpreted it, giving adequate meaning and purpose to each sentence of the parties' agreement in Article I(K)." The ALJ concluded that the arbitration award "plainly draws its essence from the CBA," and it ordered Triton to comply with the award.

¶ 21    Triton filed two exceptions to the ALJ's decision and order. First, Triton argued that the ALJ improperly granted deference to the arbitrator's award and improperly found that the arbitrator's award drew its essence from the CBA such that the award was not binding and should not be enforced. Second, Triton contended that it did not violate sections 14(a)(1) and 14(a)(8) of the Act (*id.* § 14(a)(1), (a)(8)) when it did not comply with the arbitrator's award because the award was not binding. Triton requested the Board reject the ALJ's recommended decision and order.

¶ 22    The Board subsequently issued its opinion and order, in which it adopted the ALJ's factual findings, affirmed the ALJ's recommended decision and order, and concluded that Triton violated sections 14(a)(1) and 14(a)(8) of the Act (*id.*) when it refused to comply with the arbitration award. The Board noted that the arbitrator found that the Union met the four

requirements under the CBA to establish a past practice and that, therefore, it was a legitimate past practice to provide full release to the chair of the nursing department. The Board stated that Triton did not raise anything in its exceptions that would support reversing the ALJ's finding that the "award drew its essence from the CBA." The Board highlighted that Triton's argument that "Article III(K) eclipses Article I(K) is an issue of contractual interpretation reserved for the arbitrator, not this Board" and that "[b]ecause the parties have contracted to have disputes settled by an arbitrator chosen by them, it is the arbitrator's meaning of the contract that they agreed to accept." The Board ordered Triton to, among other things, comply with the arbitrator's award and make Brewer whole for all losses she incurred due to Triton's failure to comply with the award.

¶ 23        This direct administrative review follows.

¶ 24                                II. ANALYSIS

¶ 25        On direct administrative review, Triton contends that the Board erred because it failed to find that the arbitrator exceeded its authority such that the award was not binding. Triton asserts that Article III(K)(2)(c) of the CBA contains specific, controlling and unambiguous language that expressly limits Brewer to five hours of release time. Triton argues that because the CBA provides an unambiguous rule regarding release time in Article III(K), the arbitrator did not need to consider past practice in Article I(K), and it acted outside its scope of authority when it did so. Triton also contends that the arbitrator ignored the plain language of the past practice provision and misinterpreted the "lookback" period, which is clearly defined by the CBA as the entire 20 years before the alleged grievance. According to Triton, this period for Brewer's claim was 20 years from 2020, not the 12 ½-year period from 2007-2019 that the arbitrator considered. As such, Triton argues the arbitrator's award was not binding, and it was not obligated to comply with the award because it did not arise from or draw its essence from the CBA.

¶ 26 Review of a decision by the Board proceeds "directly to the appellate court and is governed by the Administrative Review Law." *Western Illinois University v. Illinois Educational Labor Relations Board*, 2021 IL 126082, ¶ 30 (citing 735 ILCS 5/3-101 *et seq.* (West 2016)); 735 ILCS 5/16 (West 2024). Under the Administrative Review Law, we may review "all questions of law and fact." 735 ILCS 5/3-110 (West 2024). Our standard of review in an administrative review case "depends on whether the question is one of law, fact or a mixed question of law and fact." *County of Cook v. Illinois Labor Relations Board*, 2012 IL App (1st) 111514, ¶ 17.

¶ 27 Here, Triton argues the Board erred in failing to find that the arbitrator exceeded its authority such that the award was not binding. "Whether an arbitrator has exceeded the scope of his authority and has reached a decision that fails to draw its essence from the collective-bargaining agreement is a question of law." *Griggsville-Perry Community Unit School District No. 4 v. Illinois Educational Labor Relations Board*, 2013 IL 113721, ¶ 20. We review questions of law *de novo*. *Western Illinois University*, 2021 IL 126082, ¶ 30. As such, our review of the Board's decision is *de novo*.

¶ 28 The Board found Triton violated section 14(a)(8) of the Act, which prohibits educational employers from "[r]efusing to comply with the provisions of a binding arbitration award," and section 14(a)(1), which prohibits educational employers from "[i]nterfering, restraining or coercing employees in the exercise of the rights guaranteed under this Act." 115 ILCS 5/14(a)(1), (a)(8) (West 2020). If an arbitrator exceeds its authority, the arbitration award is not binding, and an educational employer does not commit an unfair labor practice by failing to comply with the award. *Western Illinois University,* 2021 IL 126082, ¶ 74. "When an unfair labor practice charge accuses an educational employer of violating sections 14(a)(8) and, derivatively, 14(a)(1) of the Act," as the Board found here, "the same analysis governs both alleged violations."

*Cook County College Teachers Union, Local 1600 v. Illinois Educational Labor Relations Board*, 2026 IL App (1st) 251216-U, ¶ 18. In determining whether an employer violated section 14(a)(8), the Board considers three factors: "(1) whether the arbitration is binding, (2) what is the content of the award, and (3) whether the employer has complied with the award." (Internal quotation marks omitted.) *Western Illinois University,* 2021 IL 126082, ¶ 25 (quoting *University Professionals of Illinois, Local 4100*, 35 PERI ¶ 133 (IELRB 2019)).

¶ 29        As previously noted, Triton disputes the Board's finding that the arbitration award was binding. Triton argues the Board erred because it failed to find the arbitrator exceeded its authority. Our supreme court "has consistently recognized that the judicial review of an arbitral award is extremely limited." *American Federation of State, County & Municipal Employees, AFL-CIO v. Department of Central Management Services*, 173 Ill. 2d 299, 304 (1996). Under this standard, "we must 'enforce a labor-arbitration award if the arbitrator acts within the scope of his or her authority and the award draws its essence from the parties' collective-bargaining agreement.' " *Forest Preserve District of Cook County v. Illinois Fraternal Order of Police Labor Council*, 2017 IL App (1st) 161499, ¶ 19 (quoting *American Federation of State, County & Municipal Employees*, *AFL-CIO*, 173 Ill. 2d at 304-05). "There is a presumption that an arbitrator has not exceeded his authority." *Western Illinois University*, 2021 IL 126082, ¶ 56.

¶ 30        Additionally, our supreme court has explained that, "[w]here the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept." (Internal quotation marks omitted.) *Griggsville-Perry Community Unit School District No. 4*, 2013 IL 113721, ¶ 18. "[A]ny question regarding the interpretation of a collective-bargaining agreement is to be answered by the arbitrator." *American Federation of State, County & Municipal*

*Employees, AFL-CIO*, 173 Ill. 2d at 305. "We will not overrule that construction merely because our own interpretation differs from that of the arbitrator." *Id.*

¶ 31     However, "an arbitrator is confined to interpretation and application of the collective bargaining agreement" and "does not sit to dispense his own brand of industrial justice." (Internal quotation marks omitted.) *Griggsville-Perry Community Unit School District No. 4*, 2013 IL 113721, ¶ 19. An arbitrator "may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Id.* "Establishing that an arbitrator has failed to interpret the collective-bargaining agreement but has, instead, imposed his own personal views of right and wrong on an employment dispute is 'a high hurdle.' " *Id.* ¶ 20 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010)). In fact, "[i]t is not enough to show that the arbitrator committed an error—or even a serious error," but rather, "[i]t must be shown that there is no interpretive route to the award, so a noncontractual basis can be inferred and the award set aside." (Internal citations and quotation marks omitted.) *Id.*

¶ 32     Applying these principles, the arbitrator did not exceed its authority in finding that Triton violated the CBA when it did not grant Brewer, the chair of the nursing department, full release time for the spring 2020 semester. In the arbitrator's decision, it expressly acknowledged that it was undisputed that Brewer was entitled to "at least" five hours of release time pursuant to Article III(K) of the CBA. It also noted that release time was governed by the CBA and was based on the number of full-time faculty members in the department. However, the arbitrator explained that the Union's dispute "goes beyond the minimum required," as the Union contended that it was entitled to full release time based on the CBA's past practice provision contained in Article I(K).

11

¶ 33    The arbitrator then analyzed, interpreted, and applied the past practice provision. In doing so, the arbitrator addressed the four elements of the past practice provision, analyzed each sentence contained in the fourth element, and reviewed the evidence presented at the hearing by the parties regarding their respective understanding of the contractual language about the 20-year period and 60% requirement. The arbitrator expressly highlighted that it considered all the sentences contained in the fourth element and "reviewed the evidence for their collective meaning." After doing so, the arbitrator interpreted the past practice provision to mean that a past practice "need not encompass a full 20 years, but merely must have existed during the [20] years preceding the grievance."

¶ 34    The arbitrator then applied its interpretation of the past practice provision to the facts here, finding that during the 12½-year period from 2007 to 2019, the chair of the nursing department obtained full release time in 15 out of 25 semesters, or 60% of the time, which "constitutes sufficient time for a legitimate past practice." Accordingly, the arbitrator's decision was expressly based on the terms of the CBA and drew its essence from that agreement. See *Griggsville-Perry Community Unit School District No. 4*, 2013 IL 113721, ¶¶ 23, 33 (where the court found that the arbitrator's decision was based on the collective bargaining agreement and the parties' bargaining history, it noted that "the question for the appellate court was solely whether the arbitrator's decision drew its essence from the collective-bargaining agreement").

¶ 35    Triton asserts that the CBA contains an express and determinative provision in Article III(K) of the CBA that limits Brewer's release time to five hours and that the arbitrator "stepped beyond the clear language" of the CBA when it considered past practice in Article I(K).

¶ 36    The past practice provision in Article I(K) states, "[e]xcept as this Agreement shall herein provide, all terms and conditions of employment applicable on the effective date of this

Agreement as established and in force on said date shall continue to be so applicable during the term of this Agreement." However, it also states, "[u]nless otherwise provided in this Agreement, nothing herein shall be interpreted or applied so as to eliminate, reduce, or otherwise detract from any faculty benefits regarded by either party as past practice, defined below, existing prior to the effective date of this Agreement." The arbitrator acknowledged the "minimum required" hours of release time set forth in Article III(K). However, the arbitrator also found that the past practice provision in Article I(K) applied, as the Union contended that Brewer was entitled to full release "well beyond the five hours" based on past practice. As an appellate court, we will not consider the correctness of the arbitrator's interpretation of the CBA. *Griggsville-Perry Community Unit School District No. 4*, 2013 IL 113721, ¶ 23 ("The correctness of the arbitrator's interpretation of [a provision in the CBA] was not a matter for the appellate court's consideration."). Triton has failed to show that there was "no interpretive route" to the arbitrator's decision to apply the past practice provision contained in Article I(K) of the CBA. See *id*. ¶ 20.

¶ 37　　　　Triton also contends that the arbitrator misinterpreted the "lookback" period in the past practice provision, as it only considered 12½ years of data to meet the 60% threshold rather than the full 20-year period before the grievance was filed. However, as previously discussed, the arbitrator interpreted and analyzed the past practice provision of the CBA in reaching its decision, and "any question regarding the interpretation of a collective-bargaining agreement is to be answered by the arbitrator." *American Federation of State, County & Municipal Employees, AFL-CIO*, 173 Ill. 2d at 305. In fact, the arbitrator looked at the 12-year period immediately preceding the alleged grievance as required by the CBA, which states that "[p]ast practice shall be limited to actions that have occurred within the 20 years immediately preceding the alleged grievance."

¶ 38       Accordingly, the arbitrator's award drew its essence from the CBA, and the arbitrator did not exceed its authority. The Board correctly determined that the arbitration award was binding and that Triton violated the Act by refusing to comply with the binding arbitration award. See 115 ILCS 5/14(a)(1), (a)(8) (West 2020). We affirm the Board's order.

¶ 39                                    III. CONCLUSION

¶ 40       For the foregoing reasons, we affirm the final administrative decision of the Board.

¶ 41       Board decision affirmed. (Administrative review direct to the appellate court.)